**UNITED STATES of America, Appellee,**

v.

**Anthony M. SCOTTO and Anthony Anastasio, Appellants.**

**Nos. 1131, 1132, Dockets 80–1041, 80–1044.**

United States Court of Appeals, Second Circuit.

Argued May 20, 1980.

Decided Sept. 2, 1980.

Rehearing Denied March 6, 1980.

**50**

Edward Bennett Williams, Washington, D. C. (Williams & Connolly, Harold Ungar, Richard M. Cooper, Washington, D. C., of counsel), for appellant Scotto.

Michael E. Tigar, Washington, D. C. (John Mage, Lynne Bernabei, Washington, D. C., Gustave H. Newman, New York City, of counsel), for appellant Anastasio.

Alan Levine, Asst. U. S. Atty., New York City (William M. Tendy, U. S. Atty., for the Southern District of New York, Scott W. Muller, Howard W. Goldstein, Asst. U. S. Attys., New York City, of counsel), for appellee.

Before OAKES and MESKILL, Circuit Judges, and BONSAL, District Judge.*

OAKES, Circuit Judge:

Anthony M. Scotto and Anthony Anastasio, not contesting the sufficiency of the evidence, appeal from judgments of convictions on forty–three counts entered after an eight–week jury trial in the United States District Court for the Southern District of New York, Charles E. Stewart, Judge. The counts included one against Scotto, then president of Local 1814 of the International Longshoremen's Association (ILA) for participating in the affairs of the ILA through a pattern of racketeering activity from 1974 through part of January 1979 in violation of 18 U.S.C. § 1962(c) (Count 1); a count charging both Scotto and Anastasio, then executive vice president of Local 1814, with conspiring to participate in the affairs of the ILA through a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962(d) (Count 50); twenty–four counts against Scotto (Counts 2–9, 16–30, 34), eight counts against Anastasio (38–45) and three counts against both (Counts 35–37) for demanding and receiving unlawful "labor" payments totalling in excess of $250,000, in violation of the Taft–Hartley Act, 29 U.S.C. § 186(b); and four counts against Scotto (Counts 53–56) and two counts against Anastasio (Counts 59, 60) for failure to report and pay federal income taxes on the unlawful amounts obtained from the foregoing activities, in violation of 26 U.S.C. §§ 7201 and 7206(1). The jury was unable to reach a verdict on seventeen other counts alleging additional Taft–Hartley and tax violations (Counts 10–15, 31–33, 46–49, 51–52, 57–58). The sentences are set out in the margin.[1] We affirm the judgments.

* Senior District Judge of the Southern District of New York, sitting by designation.

1. Scotto was sentenced to five years' imprisonment and a $25,000 fine on Count 1; consecutive one–year terms of imprisonment on Counts 2 -6, for a total of five years, to run concurrent-

## FACTS

From 1975 through 1979, appellant Scotto was president of ILA Local 1814 in Brooklyn and vice president for legislative affairs for the ILA nationally. From 1975 through April of 1978, Anastasio was secretary–treasurer of an associated ILA local in Brooklyn, and he subsequently became executive vice president of Scotto's Local 1814. He was also an ILA national organizer. The Government's evidence was that they individually and jointly received illegal labor payoffs during the period from 1975 through 1979 from six separate waterfront businesses employing ILA members. The evidence showed the receipt of more than forty separate cash payments, some as high as $15,000, as kickbacks or commissions on business and as "extra" Christmas bonuses.

Walter D. O'Hearn, chief executive of John W. McGrath Corp. of Brooklyn, a stevedore company, paid Scotto $15,000 quarterly and $5,000 at Christmas, for a total of $65,000 annually, to obtain his assistance in reducing fraudulent and exaggerated workmen's compensation claims filed by members of Scotto's local. William Montella, general manager of Quin Marine Services, Inc., of Brooklyn, paid Scotto $5,000 quarterly and $5,000 extra each Christmas for a three–year period to secure his assistance in getting new business and keeping existing customers from competitor shipping and stevedoring companies with which Scotto dealt as a labor leader. Nicholas Seregos of Jackson Engineering Co., Inc., an ILA–affiliated marine engineering company doing general ship repair, paid Anastasio a 10% "commission" on business obtained for his company with Scotto's and Anastasio's assistance from Prudential Lines, Inc., and United States Lines. Additionally, other cash payments of thousands of dollars were received by Scotto alone or by Scotto and Anastasio from individuals representing waterfront employers of ILA labor, including C. C. Lumber Co. of Brooklyn, American Navigation Co. of Baltimore, Marine Repair Services, Inc., of Staten Island, and Joseph Vinal Ship Maintenance Co. of Manhattan. The proof also established that Scotto and Anastasio failed to declare the payoffs on their federal income tax returns, amounting in Scotto's case to $69,700 in 1975, $90,000 in 1976, and $83,500 in 1977, and in Anastasio's case to $6,500 in 1976 and $16,500 in 1977.

Scotto, who took the stand in his own defense, denied receiving any payments from Montella or O'Hearn before January of 1977. As to the payments made thereafter, Scotto admitted accepting them, but claimed he was acting only as a conduit for campaign contributions, $50,000 to the 1977 New York City mayoral campaign of Mario Cuomo, and $25,000 to the 1978 New York state gubernatorial campaign of Governor Hugh Carey. Louis Valentino, a state official, testified that he received the $50,000 in cash for the Cuomo campaign from Anastasio at Scotto's direction, and Joseph Colozza, an ILA official from Scotto's local in charge of Governor Carey's Queens campaign, testified to receiving $25,000 in cash from

ly with the sentence imposed on Count 1; $5,000 fines on Counts 2–6, totaling $25,000; five years' probation on each of Counts 7–9, to run concurrently and to commence upon expiration of the period of incarceration; $5,000 fines on Counts 16–20, totaling $25,000; a suspended sentence and five years' probation on Counts 21–30 and 34–37; a suspended sentence, five years' probation to run concurrently with the sentence imposed on Count 1, and a $25,000 fine on Count 50; five years' imprisonment on each of Counts 53 and 55, to run concurrently with the sentence on Count 1; and three years' imprisonment on each of Counts 54 and 56, to run concurrently and concurrently with the sentence imposed on Count 1. Thus, the effective sentence imposed on Scotto was five years' imprisonment, with five years' probation following completion of his prison term, and $75,000 in fines.

Anastasio was sentenced to concurrent one–year terms of imprisonment and concurrent fines of $5,000 on Counts 38–42; concurrent one–year terms of imprisonment, consecutive to the one–year term imposed on Count 38, and concurrent $5,000 fines on Counts 35–37 and 43–45, the fines imposed concurrently with the $5,000 concurrent fines on Counts 38–42; a concurrent two–year term of imprisonment and concurrent $5,000 fine on Count 50; and a suspended sentence and five years' probation on Counts 59–60. This amounted to an effective sentence of two years in prison, five years' probation, and a $5,000 fine.

Scotto. However, no records of these transactions and no reports to the New York State Board of Elections were ever made. Cross–examination of Scotto revealed that, in a tape–recorded conversation with Montella in October 1978, Scotto said that if any inquiries were ever made, he would claim the illegal monies received were for political and charitable contributions. Scotto denied the 10% commission arrangement with Nicholas Seregos, as well as receipt of any cash payoffs by Scotto and Anastasio from Joseph Vinal Ship Maintenance Co. or Marine Repair Services, Inc. He explained that the cash payment from Joseph Lacqua, an officer of C. C. Lumber Co. and American Navigation Co., was intended for and ultimately given to Scotto's wife. The jury disbelieved the "conduit" defense and other exculpatory testimony.

Anastasio did not testify on his own behalf. He did call one character witness and Anthony Valvo, a shop steward who testified to contacting Anastasio on behalf of Seregos in 1974 concerning the unionizing of Jackson Engineering Co.

## DISCUSSION

I. *The RICO and RICO conspiracy convictions—instruction on the element of "conduct of [the] enterprise's affairs"*

Among the principal arguments on appeal are those focusing on the "RICO" and "RICO conspiracy" convictions. RICO, an acronym for the part of the Organized Crime Control Act of 1970 dealing with Racketeer Influenced and Corrupt Organizations, 18 U.S.C. §§ 1961–68; *see generally* H.R.Rep.No. 91–1549, 91st Cong., 2d Sess.,

*reprinted in* [1970] U.S.Code Cong. & Admin.News, pp. 4007, 4010, 4032–33, specifically includes within its definition of "racketeering activity" a wide variety of serious criminal acts under federal and state law, among them "any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations)." *Id.* § 1961(1)(C). It furthermore defines "pattern of racketeering activity" as "requir[ing] at least two acts of racketeering activity." *Id.* § 1961(5). The term "enterprise" includes "any union." *Id.* § 1961(4). Under 18 U.S.C. § 1962(c),[2] it is unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." *Id.* There also is a prohibition against "conspir[ing] to violate any of the provisions" of subsection (c) of § 1962. *Id.* (d).

The RICO statute has been upheld as not unconstitutionally vague. *E. g., United States v. Huber*, 603 F.2d 387, 393 (2d Cir. 1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *United States v. Swiderski*, 593 F.2d 1246, 1249 (D.C.Cir. 1978), *cert. denied*, 441 U.S. 933, 99 S.Ct. 2056, 60 L.Ed.2d 662 (1979); *United States v. Campanalé*, 518 F.2d 352, 364 (9th Cir. 1975) (per curiam), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976); *United States v. Field*, 432 F.Supp. 55, 58 (S.D.N.Y.1977), *aff'd*, 578 F.2d 1371 (2d Cir.), *cert. dismissed*, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978). It has been ap-

---

**2.** 18 U.S.C. § 1962 provides in part:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in or the activities of which affect, interstate or foreign commerce. . . .

(b) It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or

indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

plied in a variety of circumstances, *e. g.*, *United States v. Boylan*, 620 F.2d 359, 360–62 (2d Cir. 1980) (RICO count and illegal labor payments counts not multiplicious and not violative of double jeopardy; RICO count does not include separate scienter element over and above that required for predicate crimes), *cert. denied*, —— U.S. ——, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980); *United States v. Weisman*, 624 F.2d 1118 (2d Cir. 1980), *cert. denied*, ···· U.S. ··· ·· , 101 S.Ct. 209, 66 L.Ed.2d 91 (1980) (affairs of theater conducted through a pattern of racketeering activity including predicate acts of securities and bankruptcy fraud); *United States v. Huber, supra*, 603 F.2d at 387 (pattern of racketeering activity, involving fraudulent execution of medical services and supplies contracts by a group of corporations).

Appellant Scotto's basic argument is that the jury was inadequately instructed on the issue whether he conducted the union's affairs through a pattern of racketeering activity, namely through the Taft–Hartley violations. He suggests that the district court's charge was inadequate because of a failure to require a sufficient nexus between the predicate misconduct and the conduct of the enterprise, and a failure to explore more fully the statutory language pertaining to the "conduct of such enterprise's affairs." Scotto notes that in cases in which an established legitimate entity as opposed to a criminal enterprise is involved, the conduct of the affairs element assumes great significance. Appellant places principal reliance on *United States v. Nerone*, 563 F.2d 836, 851–52 (7th Cir. 1977), *cert. denied*, 435 U.S. 951, 98 S.Ct. 1577, 55 L.Ed.2d 801 (1978), holding that the Government's

case failed because of inadequate proof of a connection between the racketeering activities, illegal gambling, and the corporation operating the trailer park where the gambling occurred. *See also United States v. Huber, supra*, 603 F.2d at 395 (summarizing *Nerone*). He also cites, among other cases, *United States v. Dennis*, 458 F.Supp. 197 (E.D.Mo.1978), in which the court found an indictment faulty under RICO because of its failure to assert any nexus between the alleged activities and the conduct of the enterprise. The court noted: "The mere fact that defendant is employed by the enterprise [General Motors Assembly Division] and collects unlawful debts on the premises of the enterprise . . . does not establish that the defendant participated in the conduct of the enterprise's affairs through the collection of the debts." *Id.* at 199.

The Government first argues that Scotto failed properly to preserve this claim regarding the court's jury charge. It is true that the district court during an all-day charging conference read verbatim the portion of its charge about which Scotto now complains and that defense counsel at that time declined to object to the charge. However, Scotto did both submit his own request to charge on the subject[3] and make a blanket objection to the court's failure to incorporate Scotto's suggested charges in the court's instructions. Assuming without deciding that Scotto has preserved his appeal, we reach the merits of this faulty instruction issue.

The district court instructed the jury that the Government must prove beyond a reasonable doubt:

---

**3.** The statute requires not only that you find two substantive crimes to establish a pattern of racketeering activity, you must also find that the defendant Scotto conducted the affairs of the I.L.A. through the alleged pattern of racketeering. In order to find that the defendant Scotto conduct the I.L.A.'s affairs through a pattern of racketeering, you must find that both of the alleged labor violations *concerned or related to the operation or management of the enterprise. You must find that the pattern of racketeering [a]ffected the affairs of the I.L.A. in its essential functions.*

> In order to find that the affairs of the I.L.A. were conducted through a pattern of racketeering you must find beyond a reasonable doubt *that there was a connection between the so-called acts of racketeering and the affairs of the I.L.A.* If this essential connection has not been proved then you must acquit the defendant Scotto of the charge in Count I, even if you find that all of the alleged payments were unlawfully made.

(Emphasis added.) Appendix to Brief of Appellant Scotto at 46.

[T]hat through the two or more of these connected racketeering offenses the defendant Scotto conducted or participated directly or indirectly in the conduct of the affairs of that enterprise.

And the court went on to explain:

[Y]ou must find beyond a reasonable doubt that the defendant committed the two or more of the offenses alleged in Counts 2 through 37 *while and as part of conducting or participating either directly or indirectly in the conduct of the affairs of the enterprise.*

In this regard it is not necessary for the Government to prove that the affairs of the enterprise were advanced by the defendant's activities, although you may find this to be true, or that the particular enterprise was corrupt or that the enterprise authorized the defendant to commit the particular acts of racketeering activity alleged.

It is only necessary to find that the acts were committed by the defendant or caused to be committed by him in the conduct of, or his participation in, the affairs of the enterprise.

(Emphasis added.)

Appellant wanted the court to state that the jury was required to find that the predicate acts "concerned or related to the operation or management of the enterprise" and "[a]ffected the affairs of the I.L.A. in its essential functions." But appellant cites no case demanding that a jury charge include his proposed or similar language. *United States v. Huber, supra,* and *United States v. Nerone, supra,* two of the cases upon which appellant relies, involved challenges to allegations in the indictment or to the sufficiency of the evidence; they did not discuss the language to be used in charging the jury about the conduct of the enterprise. In any event, their holdings concerning the degree of interrelationship required do not go as far as appellant would like. We agree with Judge Pierce, in *United States v. Stofsky,* 409 F.Supp. 609 (S.D.N.Y.1973), aff'd, 527 F.2d 237 (2d Cir. 1975), *cert. denied,* 429 U.S. 819, 97 S.Ct. 65, 50 L.Ed.2d 80 (1976), that the statute "does not define

[the] connection by distinguishing between predicate acts which play a major or a minor role, or any role at all, in what might be seen as the usual operations of the enterprise; nor does it require that such acts be in furtherance of the enterprise . . . ." *Id.* at 613. The statute, then declines to define in quantitative terms the degree of interrelationship between the pattern of racketeering and the conduct of the enterprise's affairs.

▮ We think that one conducts the activities of an enterprise through a pattern of racketeering when (1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise. Simply committing predicate acts which are unrelated to the enterprise or one's position within it would be insufficient. *Cf. United States v. Rubin,* 559 F.2d 975, 990 (5th Cir. 1977), *vacated on other grounds,* 439 U.S. 810, 99 S.Ct. 67, 58 L.Ed.2d 102 (1978), *rev'd in part on other grounds,* 591 F.2d 278 (5th Cir. 1979) (RICO requires "some required relationship between the proscribed acts and the maintenance of union position"). But, as Judge Lasker noted in *United States v. Field, supra :*

Section 1962(c) nowhere requires proof regarding the advancement of the union's affairs by the defendant's activities, or proof that the union itself is corrupt, or proof that the union authorized the defendant to do whatever acts form the basis for the charge. It requires only that the government establish that the defendant's acts were committed in the conduct of the union's affairs.

432 F.Supp. at 58. Furthermore, we do not think it necessary for a person to solidify or otherwise enhance his position in the enterprise through commission of the predicate violations.

▮ The court below properly told the jury that it was necessary to find that the defendant committed two or more of the offenses alleged in Counts 2 through 37

"while and as part of conducting or participating either directly or indirectly in the conduct of the affairs of the enterprise." The charge did not have to require that the I.L.A. was itself corrupted or even that the union's policies and administration were changed by the racketeering pattern. Judge Stewart in this case emphasized more clearly the need for a connection than a charge upheld in *United States v. Rubin, supra,* 559 F.2d at 989–90. There, the Fifth Circuit declined to find reversible error in the district court's failure to add to the charge the defendant's proffered words "by means of," in addition to the word "through," and approved an instruction, tracking the language of § 1962(c), that the Government had to prove that the defendant participated in the affairs of the union "through" the two or more offenses. We thus find no error in this part of the charge.

## II. *RICO–mens rea*

Appellant Scotto argues that the RICO conviction is invalid and both appellants allege that the RICO conspiracy convictions are invalid because the district court failed to instruct the jury adequately on *mens rea.* The statute on its face is silent on the issue of *mens rea.* Scotto attributes the lack of *mens rea* language in the RICO statute to a congressional oversight. Appellants argue that this silence is ordinarily overlooked because most of the predicate offenses listed in § 1961, such as murder, kidnapping, arson and robbery, themselves require high degrees of *mens rea.* Unlike these other listed predicate offenses, a Taft–Hartley vi-

olation of 29 U.S.C. § 186[4] is a non–*mens rea* misdemeanor. Consequently, their argument runs, a RICO indictment predicated solely on violations of § 186 could produce a twenty–year sentence without any proof of *mens rea,* an unfair result, unless RICO *itself* supplies some additional *mens rea* requirement.

 . As we recently stated in *United States v. Boylan,* 620 F.2d at 361–62, "[t]he RICO count does not include a scienter element over and above that required by the predicate crimes, in this case the violations of 29 U.S.C. § 186(b)(1)." The charge delivered by the district court in *Boylan,* which imposed an intent element on the defendant as a taker of a § 186(a) payment, was upheld and characterized as "more favorable to defendant than required by *United States v. Ricciardi,* 357 F.2d 91, 99 (2d Cir. 1966)." *Boylan,* 620 F.2d at 362. In the instant case, Judge Stewart required the jury, before it rendered RICO convictions, to find that the defendant under consideration "acted wilfully and knowingly," that he "knew what he was doing and that he did it deliberately and voluntarily," that he acted "knowingly and deliberately with a criminal motive or purpose," and that he "was aware of the general unlawful nature of his act."

Scotto further argues that the instruction was improper because it did not require the jury to find a willful violation of RICO. Relying on *United States v. Winston,* 558 F.2d 105, 107–09 (2d Cir. 1977), he defines

---

4. 29 U.S.C. § 186 provides in part:

 (a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

 (1) to any representative of any of his employees who are employed in an industry affecting commerce; or

 (2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or

 (4) to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization.

 (b)(1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section.

the term "willfully" as intentionally violating a "known legal duty." *Winston*, however, involved a violation of Subsection Tenth, § 2 of the Railway Labor Act, 45 U.S.C. § 152, which specifically requires a "willful failure . . . to comply with the terms" of *other* subsections of the law. The law at issue here does not demand willful violations of the RICO statute, nor does it require willful violations of the predicate offenses, which would make the *Winston* case analogous. Therefore, although the Government concedes that willfully committing some unlawful predicate act is necessary, no specific intent to engage in an unlawful pattern of racketeering prohibited by RICO is required. Here, as in *Boylan*, we think the court's charge was favorable to the defendant because it permitted conviction under RICO only if the jury found a "criminal motive or purpose." Even the cases cited by Scotto do not require as much.

■ The argument made by both appellants attacking the district court's view of the intent necessary for a RICO conspiracy conviction also lacks merit. In the part of the jury charge dealing with the conspiracy count, Judge Stewart repeated some of the language from his charge on the substantive RICO offense. He also stated at one point that appellants must be found to have "participated in the conspiracy with a specific and criminal intent, that is, a purpose to violate the law." If anything, the district court erred in favor of the appellants by delivering this portion of the charge in which it implied that a specific intent to violate the RICO conspiracy provision was required. We have no reason to believe, however, from the words of the statute or from general criminal law doctrine, that the quantum of *mens rea* required for a RICO conspiracy conviction should be different from or greater than that required for a substantive RICO offense. 18 U.S.C. § 1962(d). *See United States v. Feola*, 420 U.S. 671, 686–88, 95 S.Ct. 1255, 1264–65, 43 L.Ed.2d 541 (1975); *United States v. Mauro*, 501 F.2d 45, 51 (2d Cir.), *cert. denied*, 419 U.S. 969, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974).

III. *Section 186 counts as lesser included offenses in RICO*

■ Appellant Scotto argues that multiple sentences, even if concurrent, cannot be imposed for violations of RICO and § 186 because § 186 Taft–Hartley Act violations are lesser included offenses, citing *United States v. Umans*, 368 F.2d 725, 730 (2d Cir. 1966), *cert. dismissed*, 389 U.S. 80, 86 S.Ct. 253, 19 L.Ed.2d 255 (1967). The argument is that § 186 violations are lesser included offenses because all of their elements, plus other elements, must be proved to show a RICO violation predicated as here on violations of § 186. *See Sansone v. United States*, 380 U.S. 343, 349–50, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965) (defining lesser included offenses); *United States v. Markis*, 352 F.2d 860, 865–67 (2d Cir. 1965), *vacated on other grounds*, 387 U.S. 425, 87 S.Ct. 1709, 18 L.Ed.2d 864 (1967).

This issue was, however, resolved contrary to appellant Scotto's position in *United States v. Boylan, supra*, 620 F.2d at 360–61. In *Boylan* this court held that RICO and § 186 violations are "separate crimes, separately punishable," because they "do not proscribe the same act or transaction, and they implement different congressional purposes." *Id.* at 361. *See also United States v. Rone*, 598 F.2d 564, 571 (9th Cir. 1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980).

IV. *Violation of 29 U.S.C. § 186(b)(1) is a RICO predicate offense*

■ Appellants contend that the only illegal payments that can serve as predicate offenses to a RICO violation are those prohibited by 29 U.S.C. § 186(a)(4)–a bribery provision.[5] Here, the Taft–Hartley predicate offenses charged involved the receipt of payments from an employer by a representative of his employees in violation of § 186(b). Because the definition of "racketeering activity" in 18 U.S.C. § 1961(1)(C) makes a violation of any part of § 186 a

5. *Id.*

sufficient predicate offense on which to base a RICO conviction, we reject appellants' claim. The legislative history presented by appellant Anastasio fails to convince us that the RICO statute should be given any reading other than the one indicated by its words themselves.

### V. The court's charge on the elements of § 186

■ Appellant Scotto contends that the district court improperly instructed the jury regarding the definition of the "thing of value" required to be received for a § 186(b) violation. This claim relates to his "conduit" defense that the O'Hearn and Montella payments were for political campaign contributions. The court's charge defined "thing of value" as "any material thing with a monetary value" and noted that with respect to the conduit defense, the Government could not prevail if, in addition to certain other facts, the jury found that Scotto "did not benefit in any way by the payment or delivery of the money to him." This portion of the instructions was not expressly objected to at trial. Indeed, Scotto expressly agreed in the charging conference that he was required not to "benefit" from any payments. Nor was any objection made during the charging conference, a transcript of which we have reviewed, to the suggestion made by United States Attorney Fiske and later incorporated in the charge that the jury might find a benefit to Scotto simply from his delivery of campaign contributions. While we have some doubt about whether mere goodwill from delivering such contributions is properly within the meaning of "thing of value" under § 186(b)(1), we do not find that part of the charge to constitute "plain error," under Fed.R.Crim.P. 52(b), in the context of long and complicated instructions. *See United States v. Calfon,* 607 F.2d 29, 31 (2d Cir. 1979), *cert. denied,* 444 U.S. 1085, 100 S.Ct. 1044, 62 L.Ed.2d 771 (1980).

■ Nor was the district court required, as Scotto contends, to charge the jury that Scotto had to "know" that the benefit he was receiving was a "thing of value" before he could be convicted of a § 186(b) violation. This issue was not raised below and no such instruction was requested. Moreover, nothing in the language of § 186 requires knowledge that what one is receiving is a "thing of value." *But see United States v. Holt,* 333 F.2d 455, 456–57 (2d Cir. 1964), *cert. denied,* 380 U.S. 942, 85 S.Ct. 1020, 13 L.Ed.2d 961 (1965) (instruction upheld requiring knowledge that § 186(b) payment was a thing of value and that it was being given by an employing company to a union leader). All that is required is an awareness of the benefit itself.

### VI. Taxation of "things of value"

■ In a rather farfetched argument, appellant Scotto maintains that his tax convictions under Counts 55–56 should be reversed because the jury might have mistakenly thought that an intangible benefit received from conveying political contributions would constitute taxable income. He bases this contention on the fact that the district court repeated the term "things of value," used earlier in discussing the Taft–Hartley counts, to explain to the jury what constituted taxable income. In the context of the entire charge, however, we believe there was little or no chance that the jury would apply to the tax counts the district court's previous explanation of what would be a sufficient "benefit" necessary to find guilt under § 186(b). Furthermore, the district court was not required as Scotto contends to tell the jury that the defense to Counts 53 and 54 was different from that to Counts 55 and 56.

### VII. Misjoinder of defendants

■ Appellant Anastasio argues that he was misjoined with Scotto in violation of Fed.R.Crim.P. 8(b) and 14. We are convinced that he failed to make before trial the 8(b) motion which he now advances, as is required in order to preserve it on appeal. *United States v. Papadakis,* 510 F.2d 287, 300 (2d Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975). A proper 8(b) motion must be granted if the indictment violates the rule. Anastasio did make

a timely motion under Rule 14, which provides for the discretionary severance of either counts or defendants, asking the district court to order a separate trial for each defendant. Asserting that the 8(b) issue is dispositive, however, he does not now argue on appeal that the trial judge abused his discretion in denying the Rule 14 motion. Nor do we think that there was such an abuse, since it was alleged (and proven) that the codefendants participated as partners in respect to certain of the payments.

Appellant Scotto offered a motion under Rule 8, as well as a motion under Rule 14, before the trial began. He moved pursuant to both rules to sever himself from Anastasio or, in the alternative, to sever a number of new substantive Taft–Hartley counts in a superseding indictment charging Anastasio with the Seregos payments. Anastasio did not join in this motion, we assume for practical reasons since if the motion were granted in the alternative he would be required to stand trial twice.

On September 10, 1979, the day before the trial started, the Government filed a superseding indictment, dropping a mail fraud charge as well as four Taft–Hartley counts against Scotto alone. At that time Scotto renewed his earlier severance motions. In the alternative, Scotto moved to dismiss the RICO conspiracy count on the ground that there were now not one but multiple conspiracies charged. Anastasio's counsel "join[ed] in the application for a severance of [his] client . . ." Neither defendant moved to sever the substantive racketeering count and the Taft–Hartley counts against Scotto alone from the other counts charging Scotto and Anastasio together. Thus by the time the trial commenced Anastasio had not moved the court to sever the charges against Scotto alone from the charges against both Scotto and himself. But even if Anastasio did properly raise the 8(b) issue that he now argues, there were sufficient allegations and proof that Anastasio and Scotto participated in the same series of transactions, which included the racketeering counts and the racketeering conspiracy counts. The former is thus in no better a position than the appellant Cannatella in *United States v. Weisman*, 624 F.2d 1118, *supra*, at 1129–30, who was not named in any RICO count or the securities fraud counts charged in the indictment against the other defendants but whose 8(b) motion was denied since, as the rule specifically provides, "all of the defendants need not be charged in each count."

Appellant Scotto also raises a misjoinder argument. Concededly, he filed a timely motion pursuant to Rules 8 and 14, which argued that the substantive Taft–Hartley counts against Anastasio (Counts 38–49) were misjoined. Those counts against Anastasio alone relate to different payments made by Seregos of Jackson Engineering Co., Inc., in the years 1977, 1978, and 1979. Jackson Engineering is also a subject of the overt acts listed in the conspiracy count. Accordingly we do not think that this joinder was erroneous. Even if it were erroneous, it would constitute harmless error in Scotto's case. *United States v. Werner*, 620 F.2d 922 (2d Cir. 1980).

We have carefully considered any and all other contentions of the appellants and find them to be without merit. Accordingly, the judgments are affirmed.

## ORDER ON PETITION FOR REHEARING BY APPELLANT ANTHONY ANASTASIO

Treating appellant's motion under Rule 8(b) as properly and timely made, it was properly denied. This is true because, as required by Rule 8(b), the appellants were "alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." "[A]ll of the defendants need not be charged in each count." Fed.R.Crim.P. 8(b). As Judge Stewart pointed out in his memorandum decision, No. 79 Cr. 32 at 7 (S.D.N.Y. Jan. 1, 1980), appellant Anastasio was named alone in twenty counts out of sixty and jointly with appellant Scotto in three substantive counts. Also, Count 50, which charges them with conspiracy, incorporated the allegations in Counts 35–49 (all of which name

appellant Anastasio) as "describing some of the means by which the defendants committed the offenses charged."

Put another way, appellant would have no objection under Rule 8(b) if the counts involving Scotto alone (1–34 and Scotto's income tax counts) had been severed (under Rule 14 or otherwise), thereby resulting in *two* trials for Scotto. But these counts were part of the series of acts committed by Scotto constituting offenses in a substantial number of which Anastasio directly participated and as to a substantial number of which he conspired.

Accordingly, the petition for rehearing is denied.