YELLOW BUS LINES, INC., Appellant,

v.

DRIVERS, CHAUFFEURS & HELPERS
LOCAL UNION 639, et al.

James F. WOODWARD

v.

Michael DiPALERMO, et al.

Maria Triggs, Secretary/Treasurer,
Yellow Bus Lines, et al.,
Appellants.

Nos. 86–5135, 86–5136.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 9, 1990.

Decided Sept. 4, 1990.

Thomas G. Corcoran, Jr., with whom Henry M. Lloyd, Washington, D.C., was on brief, for appellants in No. 86–5135 and No. 86–5136.

John R. Mooney, with whom Hugh J. Beins, Washington, D.C., was on brief, for appellees in both cases.

Robert M. Weinberg, Lawrence Gold, Jack Levine and George Kaufmann, Washington, D.C., were on brief, for amicus curiae, urging that the panel's decision be reversed and the District Court ruling be reinstated and affirmed.

Before WALD, Chief Judge, and MIKVA, EDWARDS, RUTH B. GINSBURG, SILBERMAN, BUCKLEY, WILLIAMS, D.H. GINSBURG, SENTELLE, and THOMAS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

Concurring opinion filed by Circuit Judge MIKVA.

SENTELLE, Circuit Judge:

■ In 18 U.S.C. § 1962(c), the Racketeer Influenced and Corrupt Organizations Act ("RICO") makes it "unlawful for any person employed by or associated with any enterprise engaged in ... interstate ... commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." In this case, the issue is: Does a union merely by conducting a recognition strike against an employer "conduct or participate, directly or indirectly, in the conduct of" the employer's affairs within the meaning of section 1962(c)? Our answer is that it does not. In reaching that conclusion, we examine the breadth of the "participation" element of the statutory cause of action under civil RICO.

## I. BACKGROUND

### A. *The Statute*

In 1970, Congress enacted RICO as Title IX of the Organized Crime Control Act of 1970, Pub.L. No. 91–452, 84 Stat. 941. RICO is codified at 18 U.S.C. §§ 1961–68. Although codified in Title 18, Crimes and Criminal Procedure, the RICO statute also establishes civil remedies in section 1964. That section provides in pertinent part that

> [a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c).

Thus, although section 1964 creates the civil remedy, it is to section 1962 that we must look for the substantive law underlying the civil claim. In the present action, the claim arises under subsection (c) of section 1962:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).[1]

■ To make out a claim for relief "a civil RICO claimant must prove (1) a violation of the substantive RICO statute, 18 U.S.C. § 1962, and (2) an injury to the plaintiff's 'business or property by reason of a violation of section 1962.'" *Alcorn County, Miss. v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1167 (5th Cir.1984). Thus, in addition to the element of injury, a civil RICO plaintiff making a claim under subsection (c) must prove:

(1) the existence of an enterprise which affects interstate or foreign commerce;
(2) that the defendant was "employed by" or "associated with" the enterprise;
(3) that the defendant participated in the conduct of the enterprise's affairs; and
(4) that the participation was through a pattern of racketeering activity....

*Id.* at 1168 (internal brackets omitted) (citing *United States v. Phillips*, 664 F.2d 971, 1011 (5th Cir. Unit B 1981)).[2]

In the present *en banc* review, we address the scope of the third or "participation in the conduct of affairs" element.[3]

### B. *The Litigation*

The factual background of this litigation is set forth in some detail in the two panel opinions previously issued in the case. *Yellow Bus Lines, Inc. v. Local Union 639*, 839 F.2d 782 (D.C.Cir.1988), *vacated*, —— U.S. ——, 109 S.Ct. 3235, 106 L.Ed.2d 583 (1989) (Panel Op. I); *Yellow Bus Lines, Inc. v. Local Union 639*, 883 F.2d 132 (D.C.Cir.1989), *reh'g granted* (Oct. 17, 1989) (Panel Op. II). We will not detail those facts unrelated to the issue before the *en banc* Court, but a brief review is necessary to provide a context for our decision.

This litigation arose out of events surrounding a four-day strike for recognition conducted by Local Union 639 ("the Union") against Yellow Bus Lines, Inc. ("Yellow Bus" or "the bus line") in 1981. Yellow Bus asserted a number of claims, most of them nonfederal tort matters. We do not address those nonfederal causes of action as an *en banc* Court, but leave intact the dispositions entered by the panel opinions cited above. In the claims we examine in the present review, Yellow Bus alleged violations of RICO, 18 U.S.C. §§ 1962(c) & (d), by the Union and its business agent and trustee James Woodward.

The bus line's original RICO complaint alleged that defendants Union and Woodward constituted "an enterprise" within the meaning of section 1962. The District Court, in an order of June 1, 1984, supported by a memorandum of June 28, 1984, dismissed the RICO action against the Union. The District Court reasoned:

The language of § 1962 clearly contemplates the interaction of a person and an enterprise, both separately defined by the Act. RICO prohibits any *person*,

---

**1.** Appellant also asserts a claim under 18 U.S.C. § 1962(d). That section simply makes it "unlawful ... to conspire to violate ... subsection[s] (a), (b) or (c)." As subsection (d) raises no separate issue for analysis, our discussion will focus on subsection (c).

**2.** This formulation of the elements does not differ substantively from the authoritative outline of elements prepared by the Supreme Court in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), which treated injury as a standing requirement, and outlined the elements as "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," 473 U.S. at 496 (footnote omitted).

The Supreme Court in *Sedima* focused on different questions than the one we address today, and we find the Fifth Circuit's outline more useful for our present inquiry.

**3.** In the order providing for *en banc* review in this case, we directed the parties also to brief the second, or "associational" element. Since both parties, while briefing several other issues not encompassed within the intent of our *en banc* order, chose to ignore the "associational" element, we leave any review of that element by this Circuit for some case in which the parties properly frame the controversy.

employed by or associated with an *enterprise*, from participating in the conduct of such enterprise through a pattern of racketeering activity. RICO does not hold the enterprise ... liable, but only those *persons* who seek to participate in the affairs of the enterprise through a pattern of racketeering activity.... The language of RICO has been found to be ambiguous on other issues, but we find this language is clear and that our interpretation is supported by the case law. *Yellow Bus Lines, Inc. v. Local Union 639*, No. 83–1232, slip op. at 8, 1984 WL 2915 (D.D.C. June 28, 1984) ("Memorandum of June 28") (quoting *Bays v. Hunter Savings Assoc.*, 539 F.Supp. 1020, 1023–24 (S.D.Ohio 1982)).

Each of our panel opinions has affirmed that decision of the District Court, reasoning, *inter alia*:

> Logic alone dictates that one entity may not serve as the enterprise and the person associated with it because, as Judge Posner of the Seventh Circuit has stated, "you cannot associate with yourself."

Panel Op. I, 839 F.2d at 790 (quoting *McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir.1985)); Panel Op. II, 883 F.2d at 139 (same). This nonidentity between the "person" liable as a RICO defendant, and the "enterprise" in whose affairs the person has participated has been required by a nearly unanimous majority of courts that have considered the question (see cases collected in Panel Op. I, 839 F.2d at 790, and Panel Op. II, 883 F.2d at 139), although the Eleventh Circuit may constitute a minority of one to the contrary. *See United States v. Hartley*, 678 F.2d 961, 989–90 (11th Cir. 1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983). As with the claims decided under the District Court's pendent jurisdiction, the *en banc* Court leaves the panel reasoning undisturbed as to the nonidentity requirement.

Although dismissing the RICO action against the Union, the District Court initially permitted the RICO action to continue against Woodward. The court reasoned that "the 'enterprise' ... is properly viewed as Local 639," Memorandum of June 28 at 10, and Woodward served as the "person" or defendant who participated in the enterprise's affairs under section 1962(c). Subsequently the District Court allowed summary judgment in favor of Woodward on the RICO claim on other grounds explained in a memorandum of October 29, 1984. In that memorandum, the District Court followed the reasoning of the Second Circuit in *Sedima, S.P.R.L. v. Imrex Co.*, 741 F.2d 482 (2d Cir.1984), *rev'd*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), that a distinct "RICO injury," different in kind from injury resulting in normal course from predicate acts, was required for a civil RICO action. Between the time of the District Court's entry of summary judgment and our panel's review, the Supreme Court handed down its decision reversing the Second Circuit in *Sedima. Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Therefore, our panel reversed the District Court's grant of summary judgment as to the RICO claim against Woodward and remanded the case for trial. Panel Op. I, 839 F.2d at 789; Panel Op. II, 883 F.2d at 139. Again we leave this portion of the panel's decision undisturbed.

The question which does command the attention of this *en banc* Court relates to a motion by Yellow Bus to amend its complaint to name itself, Yellow Bus Lines, Inc., as the enterprise with which Local 639 as person or defendant was associated, and in the conduct of whose affairs that defendant participated by a pattern of racketeering activity. The District Court denied Yellow Bus's motion, reasoning that "the union's acts were not committed in the conduct of *Yellow Bus'* affairs; Yellow Bus was, if anything, merely the 'setting' for the union's activities." Memorandum of June 28 at 10 n. 5. On appeal, the panel reversed this ruling, concluding that the District Court erroneously applied an "overly restrictive" interpretation of the participation element. Panel Op. I, 839 F.2d at 792–94. The Union petitioned the Supreme Court for certiorari on the RICO issues. On July 1, 1989, the Supreme Court vacated the first panel opinion and remanded the

case for further consideration in light of *H.J. Inc. v. Northwestern Bell Telephone Co.,* —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). *Local Union No. 639 v. Yellow Bus Lines, Inc.,* —— U.S. ——, 109 S.Ct. 3235, 106 L.Ed.2d 583 (1989). After reconsidering the matter in light of the *H.J. Inc.* decision, the panel issued its second opinion reiterating its original conclusion in language identical in pertinent part to its first opinion. Panel Op. II, 883 F.2d at 141–44. It was on this question that we ordered a rehearing *en banc.*

## II. ANALYSIS

Simply put, our task is to determine the intent of Congress in using the phrase "to conduct or participate, directly or indirectly, in the conduct of [the] enterprise's affairs," 18 U.S.C. § 1962(c). That we may put the question with some degree of simplicity does not mean that our task is a simple one. The numerous courts that have construed the participation requirements of § 1962(c) have followed divergent paths and have reached disparate conclusions.

The Second Circuit—at least in dicta—has announced the broadest interpretation of the "participation in the conduct" language. That circuit stated that

> [o]ne conducts the activities of an enterprise through a pattern of racketeering when (1) one is enabled to commit the predicate offenses solely by virtue of [one's] position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise.

*United States v. Scotto,* 641 F.2d 47, 54 (2d Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981).[4] The *Scotto* court acknowledged that simply committing predicate acts which are unrelated to the enterprise or to one's position in the enterprise is insufficient to satisfy the participation requirement, but stated:

> Section 1962(c) nowhere requires proof regarding the advancement of the [enterprise's] affairs by the defendant's activities, or proof that the [enterprise] itself is corrupt, or proof that the [enterprise] authorized the defendant to do whatever acts form the basis for the charge.

*Id.* at 54, quoting *United States v. Field,* 432 F.Supp. 55, 58 (S.D.N.Y.1977), *aff'd,* 578 F.2d 1371 (2d Cir.), *cert. dismissed,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978). *See also United States v. LeRoy,* 687 F.2d 610, 616–17 (2d Cir.1982), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983); *United States v. Provenzano,* 688 F.2d 194, 200 (3d Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634 (1982).

We do not necessarily dispute the Second Circuit's views about what section 1962(c) does *not* require. However, the *Scotto* Court was far too lenient in its test for what section 1962(c) *does* require. If section 1962(c) can apply whenever predicate offenses are merely *related to* the activities of an enterprise, then the "participation in the conduct" element of that section practically drops out. Any pattern of predicate acts remotely related to an "enterprise," whether committed by a mail clerk in the target enterprise or by the C.E.O. of the enterprise's business competitor, might give rise to RICO liability under the Second Circuit's *Scotto* test.

Recognizing the overbreadth of the Second Circuit's language in *Scotto,* the Fifth Circuit modified the *Scotto* standard to establish a more restrictive test. *United States v. Cauble,* 706 F.2d 1322 (5th Cir. 1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984). The court explained that "[t]he mere fact that a defendant works for a legitimate enterprise and commits racketeering acts while on the business premises does not establish that the affairs of the enterprise have been conducted 'through' a pattern of racketeering activity." *Id.* at 1332. The court thus modified the *Scotto* standard by joining the

---

**4.** The Ninth Circuit has adopted the *Scotto* test, but has not fleshed out the standard any more than the Second Circuit did in *Scotto. See, for* example, *United States v. Yarbrough,* 852 F.2d 1522, 1544 (9th Cir.), *cert. denied,* 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988).

two parts of the *Scotto* test with an "and" rather than an "or." *Id.* at 1333. Under the *Cauble* court's rule, the predicate racketeering acts must have some effect on the lawful enterprise *and* the defendant's position in the enterprise must facilitate the defendant's commission of those racketeering acts.

The Eighth Circuit, *en banc*, articulated probably the most restrictive view of the scope of the "participation in the conduct" requirement. Offering a district court guidance for evaluating a plaintiff's complaint on remand, that circuit wrote:

Mere participation in the predicate offenses listed in RICO, even in conjunction with a RICO enterprise, may be insufficient to support a RICO cause of action. A defendant's participation must be in the *conduct* of the affairs of a RICO enterprise, which ordinarily will require some *participation in the operation or management of the enterprise* itself.

*Bennett v. Berg*, 710 F.2d 1361, 1364 (8th Cir.), *cert. denied*, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983) (emphasis supplied) (citation omitted).

The Eleventh Circuit rejected such an "operation or management" test, expressly stating, "It is not necessary that a RICO defendant participate in the management or operation of the enterprise." *Bank of America v. Touche Ross & Co.*, 782 F.2d 966, 970 (11th Cir.1986). The *Touche Ross* court rejected the defendants' argument "that Congress intended to limit the reach of a civil RICO action by imposing a 'conduct' requirement, *i.e.*, that defendant conducted or participated in the conduct of a RICO enterprise in a significant manner." *Id.* In the Eleventh Circuit's view, "This argument ignores the 'directly or indirectly' language of § 1962(c)." *Id.* The court emphasized:

The substantive proscriptions of the RICO statute apply to insiders *and outsiders*—those merely 'associated with' an enterprise—who participate directly *and indirectly* in the enterprise's affairs through a pattern of racketeering activi-

ty. . . . The RICO net is woven tightly to trap even the smallest fish, those peripherally involved.

*Id.* (quoting *United States v. Watchmaker*, 761 F.2d 1459, 1476 (11th Cir.1985), *cert. denied*, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 917 (1986)). The Eleventh Circuit concluded that the word "conduct" in section 1962(c) "simply means the performance of activities necessary or helpful to the operation of the enterprise." *Id.* (citations omitted).

Several circuits have rejected the Eleventh Circuit's conclusion that conduct of an enterprise's affairs means activity that benefits the enterprise. For example, the Fourth Circuit explicitly modified a previous decision that had arguably established a strict benefits test, explaining that a defendant's efforts need not produce financial profit for the enterprise to qualify the defendant as a participant. *United States v. Webster*, 669 F.2d 185, 186–87 (4th Cir.), *cert. denied*, 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 455 (1982). The court stated that the important question is whether the affairs of an enterprise are conducted through a pattern of racketeering activity, but the court did not define "conducted" more specifically. *Id.* The Seventh Circuit also explicitly rejected the benefits test, quoting *Webster*. *United States v. Kovic*, 684 F.2d 512, 516 (7th Cir.), *cert. denied*, 459 U.S. 972, 103 S.Ct. 304, 74 L.Ed.2d 284 (1982).

As did these other circuits, we find the Eleventh Circuit's approach problematic. While that circuit viewed the Eighth Circuit's "operation and management" standard as ignoring the "directly or indirectly" language of section 1962(c), and thereby precluding section 1962(c)'s applicability to outsiders, this does not appear to be the case. The "operation and management" standard requirement can as easily be applied to—for example—an organized crime boss who pulls the strings of a corporation through a puppet president as it can to the corporation president himself. We see no inconsistency between the Eighth Circuit's "operation or management" standard and the language of the statute. Rather, it

appears that the view expressed by the Eleventh Circuit in *Touche Ross* ignores the language of the statute by eliminating the impact of the "conduct" requirement. Indeed, the Eleventh Circuit omitted the word "conduct" in its statement of section 1962(c) requirements. *See Touche Ross,* 782 F.2d at 970 (section 1962(c) applies to those "who participate ... in the enterprise's affairs through a pattern of racketeering activity") (quoting *United States v. Watchmaker,* 761 F.2d 1459, 1476 (11th Cir.1985), *cert. denied sub nom. Harrell v. United States,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 917 (1986)). Congress, we stress, did not proscribe mere *participation* in the enterprise's affairs through a pattern of racketeering activity, but rather, subjected participation *in the conduct* of an enterprise's affairs to RICO liability. 18 U.S.C. § 1962(c).

■ "Conduct" is synonymous with "management" or "direction." Webster's Third New International Dictionary 473 (1961). The "conduct of [the enterprise's] affairs" thus connotes more than just some relationship to the enterprise's activity; the phrase refers to the guidance, management, direction or other exercise of control over the course of the enterprise's activities. In order to participate in the conduct of an enterprise's affairs, then, a person must participate, to some extent, in "running the show."

■ Because "conducting" connotes more than merely "participating in" affairs, we conclude that the Eighth Circuit hit closest to the mark when it construed the "participation in the conduct" requirement in its *Bennett v. Berg* decision. 710 F.2d at 1364. Section 1962(c) applies when a defendant, through a pattern of racketeering activity, exercises significant control over or within an enterprise, participating not merely in the enterprise's affairs, but in *the conduct* of the enterprise's affairs. Most often the participation requirement will be satisfied when a defendant either participates in directing the enterprise toward its preexisting goals or participates in exercising control over an enterprise so as to reset its goals. As the

Eighth Circuit observed, most of the time this requirement will only be satisfied when the defendant, either directly or indirectly, exercises control over the management or operation of the enterprise. *Id.* We note that our construction of the statute does allow for participation in the conduct of an enterprise's affairs by "outsiders" as well as "insiders." Section 1962(c) provides that participation may be indirect as well as direct, 18 U.S.C. § 1962(c), and nothing in our interpretation of the participation requirement precludes liability on the part of outsiders. The crucial question is not whether a person is an insider or an outsider, but whether and to what extent that person controls the course of the enterprise's business.

This construction of the statute is not only faithful to the language of the statute; it is the interpretation consistent with the statute's goals. The purpose of RICO is to eliminate "the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce." S.Rep. No. 617, 91st Cong., 1st Sess. 76 (1969) ("the Senate Report"). The Senate Report discusses at length the threat to the American economic system posed by the acquisition of control over legitimate businesses, entire industries, and unions by organized crime. The statute was not designed to reach every act of corruption or petty crime committed in a business setting, but was passed in order to attack "the use of force, threats of force, enforcement of illegal debts, and corruption *in the acquisition or operation of business."* *Id.* at 81 (emphasis supplied). Sections 1962(a), (b), and (c) work in concert to proscribe the various different means by which such illegitimate acquisition or operation of business can occur. *See also* H.Rep. No. 1549, 91st Cong., 1st Sess. 27 (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.News 4007, 4033 ("Section 1962 establishes a threefold prohibition aimed at stopping the infiltration of racketeers into legitimate organizations.").

■ Congress, in enacting the RICO statute, did not purport to outlaw the commission of the predicate acts. It sought

rather to outlaw the commission of the predicate acts only when those acts were the vehicle through which a defendant "conduct[ed] or participat[ed] ... in the conduct of [the] enterprise's affairs." Section 1962(c). A simple example illustrates this important distinction. A terrorist who hijacked an airliner to extort money from an airline has committed an act that legally constitutes "racketeering activity" in terms of the RICO definitional section—1961(1) ("extortion"). And certainly this act would meet the literal terms of the Second Circuit's broad "conduct or participation" test—treating the threatened airline as the enterprise—since the seizure of its airplane is related to its activities of flying, carrying passengers, and engaging in air commerce. Nonetheless, this hardly seems to be what Congress had in mind in enacting RICO. If, on the other hand, a potential RICO defendant hijacks not the airliner but the airline, as for example by either directly or indirectly taking control of its executive management positions, this would seem to be what Congress in fact had in mind in the enactment of the RICO statute.

A broader reading of section 1962(c) would not only fly in the face of the statute's language and purpose, but would work a major restructuring of our legal landscape. For instance, as the present case illustrates, an elaborate web of statutes and regulations governs labor-management relations. If appellant is correct that by conducting the strike and organizational effort the Union participated in the conduct of the affairs of Yellow Bus, Panel Op. II, 883 F.2d at 144, then, provided the requisite pattern of racketeering activity could be shown, RICO might apply in the context of innumerable labor-management clashes. Judge Edwards noted in his concurrence to the panel's opinion, "This result seems strangely at odds with certain fundamental precepts of labor law and collective bargaining." *Id.* at 145. We agree.

Federal labor law has been crafted to strike a delicate balance between labor and management interests. The Supreme Court has stated, for instance, "Accommodation between employees' § 7 rights and employers' property rights ... 'must be obtained with as little destruction of one as is consistent with the maintenance of the other.'" *Hudgens v. NLRB*, 424 U.S. 507, 521, 96 S.Ct. 1029, 1037, 47 L.Ed.2d 196 (1976) (quoting *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 112, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1956)). By giving management a potentially powerful weapon to wield against striking workers, the result the bus line urges would reset the labor-management balance. Congress is certainly free to lay an extensive RICO blanket over entire areas of federal regulation, making attorneys fees and treble damages available in areas such as federal labor law. However, we are confident that if Congress had intended to so dramatically alter our legal terrain, it would have done so clearly and unequivocally.

The problems arising from the bus line's proposed interpretation are of course not limited to labor law. We see no logical reason why a union attempting to gain recognition from a company is any more participating in the conduct of the company's affairs than is any other external entity attempting to contract with the putative enterprise. To adopt the broad interpretation of the participation requirement urged by Yellow Bus would federalize broad areas of state common law of contracts, and "RICOize" broad areas of labor law and other federal laws governing relationships not readily identifiable as being within the enacting intent of Congress.

While not essential to our decision, we note that our construction of the statute is consistent with the general rule that ambiguous penal statutes ought to be construed narrowly against the accused. *Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980). Although arguably a broad reading of section 1962(c) would be consistent with Congress's express intention that RICO be liberally construed in order to effectuate its remedial purposes, Panel Op. II, 883 F.2d at 143, violations of section 1962(c) can lead to criminal as well as civil penalties. *See* 18 U.S.C. § 1963. In interpreting section 1962(c) we must bear in mind that "ambi-

guity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Busic*, 446 U.S. at 406, 100 S.Ct. at 1752 (internal citations omitted). If the scope of section 1962(c) is not clear from its plain language, this rule of lenity counsels in favor of a narrow reading of the statute's reach. RICO, because it has criminal as well as civil applications, must "possess the degree of certainty required for criminal laws." *H.J. Inc. v. Northwestern Bell Telephone Co.*, —— U.S. ——, 109 S.Ct. 2893, 2909, 106 L.Ed.2d 195 (1989) (Scalia, J., concurring). For this reason, we cannot endorse the broad and boundless reading of section 1962(c) urged by Yellow Bus.

We conclude, then, that the proper standard for evaluating the participation element, required by the language and purpose of section 1962(c), is one which distinguishes between participation in the affairs of an enterprise and participation in *the conduct* of an enterprise's affairs, which can lead to the hijacking of legitimate businesses through illegal activities. When it passed RICO, Congress targeted only this latter sort of participation.

Applying this standard to the facts before us, we conclude that the Union, through its organizational efforts and the activities allegedly associated with its strike for recognition, did not conduct or participate in the conduct of Yellow Bus's affairs. Rather, the Union, acting as a party with interests adverse to those of Yellow Bus, conducted only its own affairs as an enterprise. The Union's alleged activities do not constitute the sort of hijacking of Yellow Bus, in the form of acquiring and exercising control over Yellow Bus's affairs, that the RICO statute was designed to combat. The District Court thus properly declined to permit Yellow Bus to amend its pleadings to name itself as the section 1962(c) enterprise.

We note that our decision does not preclude the application of RICO in labor relations contexts. If, for instance, Yellow Bus could show that some person had, through a pattern of racketeering activities, in effect taken control of the Union and caused it to engage in the alleged racketeering activities, then section 1962(c) might reach that person. The Union, rather than Yellow Bus, would be the section 1962(c) enterprise in that case. Indeed, as we noted above, the present action can continue against Woodward on just such allegations. Our holding thus does not rule out the possibility of RICO liability in such situations, but merely requires that the named enterprise be the enterprise actually corrupted by the racketeering acts, not some other enterprise incidentally affected by the alleged racketeering activity. The fact that the surviving claim against Woodward in his individual capacity, in which the Union is the named enterprise, is not precluded by our decision here underlines the fact that our reading of RICO does not weed out RICO claims that Congress intended section 1962(c) to reach.

Because we conclude that the Union could not be deemed to have conducted or participated in the conduct of Yellow Bus's affairs through the alleged pattern of racketeering activities associated with the Union's organizational activities and recognitional strike, we hold that the District Court properly declined to allow Yellow Bus to amend its complaint to name itself as the section 1962(c) enterprise.[5]

### III. Conclusion

For the foregoing reasons, we conclude that the District Court properly dismissed Yellow Bus's RICO claims against the Union and properly declined to permit Yellow Bus to amend its pleadings to name itself as the RICO enterprise.

MIKVA, Circuit Judge, concurring in the judgment:

I concur in the judgment of the court. I am constrained, however, to express some

---

5. Because we hold that the District Court properly dismissed Yellow Bus's complaint on the basis of its failure to allege the requisite participation, we need not address the constitutional issues raised by the Union nor the questions raised by both parties concerning the District Court's and panel's treatment of the "pattern element" of section 1962(c). We also note that those claims were not raised until the *en banc* briefs, and were not invited in our order setting the case for *en banc* review.

misgivings about the way we arrive at what is clearly a rational result.

The court thoroughly canvasses the decisions of other circuit courts interpreting the RICO phrase, "to conduct or participate, directly or indirectly, in the conduct of [the] enterprise's affairs." 18 U.S.C. § 1962(c). It euphemistically describes the results of that canvass by suggesting that the courts "have followed divergent paths and have reached disparate conclusions." To put it bluntly, the appellate courts are all over the lot, as we have been on many other interpretations of this nettlesome statute. Today's opinion, for example, marks this court's third effort to review the trial court's judgment in what could be called a garden-variety labor dispute: the first judgment was vacated and remanded by the Supreme Court, and the second judgment is reversed today by this *en banc* court.

Since logic was not the coin of the realm when Congress drafted and debated RICO, *see* 116 Cong.Rec. 35196 (1970) (remarks of Rep. Celler) ("I am free to confess that emotion and passion inspired the bill...."), logic has not proven to be a very useful tool in interpreting the statute. For example, the opinion cites the general rule that "ambiguous penal statutes ought to be construed narrowly against the accused." But the court acknowledges, as it must, Congress' specific instruction that RICO be *liberally* construed in order to effectuate its remedial purposes. Pub.L. No. 91–452, § 904(a), 84 Stat. 947 (1970). It is particularly discomfiting to downplay the legislative rule and cite the lenity rule when the case before us is a civil matter, to which the lenity rule is normally inapplicable.

The court appropriately recites the deleterious impact the application of RICO in the present context could have on "the delicate balance" that Congress has elsewhere struck between labor and management interests. Yet the legislative history of RICO is replete with references to labor union corruption that Congress intended the statute to reach. *See, e.g.,* 116 Cong. Rec. 35199 (1970) (remarks of Rep. Rodino) (noting that *organized crime has the power*

to "determine whether entire industries are union or nonunion"); *id.* at 35201 (remarks of Rep. Poff) (discussing workers who are "the victims of sweetheart labor contracts"); and *id.* at 35216 (remarks of Rep. Donohue) (noting that organized crime's "money and power are increasingly used to infiltrate and corrupt ... labor unions"). Limiting the application of RICO to those instances where the "delicate balance" will not be disturbed—as the court attempts in this case—contravenes the very broad words of the statute and the apparent intent of its drafters.

My concern is not only with the text of RICO and its legislative history. The Supreme Court has previously cautioned us against restrictive interpretations of the statute that might frustrate Congress' remedial purposes. *See,* for example, *H.J. Inc. v. Northwestern Bell Telephone Co.,* — U.S. —, 109 S.Ct. 2893, 2898, 106 L.Ed.2d 195 (1989), citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 499–500, 105 S.Ct. 3275, 3286–87, 87 L.Ed.2d 346 (1985). It is true, as the court today notes, that a broad interpretation of the "participation" requirement would federalize many areas of state contract law and "RICOize" many areas of labor law—but no more so than the Supreme Court's broad interpretation of the "pattern" requirement in *Sedima* has already federalized many aspects of state fraud law. *See Sedima,* 473 U.S. at 501, 105 S.Ct. at 3287 (Marshall, J., dissenting). Hence, my misgivings stem from the vagaries of the line we draw today. Why is one element of the statute properly deemed broad while another read narrowly? Are the current contours of labor law more to be respected than those of state fraud law? And where labor and fraud issues are implicated in a single question—contract law, for example—must we apply different interpretive principles to each?

For all these misgivings, I nevertheless concur in the judgment of the court because it resolves this dispute as it ought to be resolved. But it is long past time for Congress to address ambiguities in the statute that courts have wrestled with over the past twenty years. We would be comforted to hear that Congress intended

RICO neither to trump the federal courts' ordinary restraint in preempting state fraud law, nor to overwhelm the traditional federal labor law balance. It would be good for Congress, now that passions have cooled and courts have struggled, to apply logic and order to the statute called RICO.