**PMC, INC., Plaintiff,**

v.

**FERRO CORPORATION, Defendant.**

**No. CV 89–5486 RB (Bx).**

United States District Court,
C.D. California.

May 9, 1990.

Miles N. Ruthberg, Steven R. Tekosky, Christopher E. Hahn, Heller, Ehrman, White & McAuliffe, Los Angeles, Cal., for plaintiff.

Gregory McClintock, David MacGuish, McClintock, Weston, Benshoof, Rochefort, Rubalcava & MacGuish, Los Angeles, Cal., for defendant.

## MEMORANDUM OF DECISION AND ORDER LIMITING THE SCOPE OF RICO DISCOVERY

BONNER, District Judge.

Defendant Ferro Corporation moves under Rule 16 of the Federal Rules of Civil Procedure and §§ 21.31 to 21.33 of the Manual for Complex Litigation, Second (1985) for an order that (1) requires plaintiff to provide a "RICO statement," *i.e.*, to elaborate on various aspects of its RICO claims, (2) stays all discovery, and (3) establishes a briefing schedule for early resolution of the RICO issues after the filing by plaintiff of a "RICO statement."

Ferro's motion was heard on April 23, 1990. Following oral argument, the Court took the motion under submission. For the reasons explained below, the Court grants Ferro's motion to the extent it seeks to limit the scope of discovery. However, the Court denies Ferro's motion for a "RICO

statement," to stay discovery, and to schedule early briefings.

## BACKGROUND

This action arises from a January 1986 asset purchase agreement between PMC, Inc. ("PMC") and Ferro Corporation ("Ferro"). PMC alleges that Ferro intentionally omitted and/or misrepresented material information relating to PMC's purchase of the assets of Ferro's Productol chemical plant in Santa Fe Springs, California. PMC filed this action on September 15, 1989. In its Complaint, PMC asserts thirteen claims for relief, ranging from breach of the asset sale agreement, negligent and intentional misrepresentation and liability based on CERCLA, 42 U.S.C. § 9601, *et seq.* Two of PMC's 13 claims allege RICO violations, *i.e.*, violations of 18 U.S.C. §§ 1962(a) and (b), based upon an alleged pattern of racketeering predicated upon mail and wire fraud. Ferro filed its Answer and Counterclaim on November 13, 1989, denying any liability to PMC.

Both parties have served initial written discovery requests. Discovery cut-off is set for December 31, 1990. PMC's Complaint contains no allegations of fraud beyond alleged misrepresentations that occurred in connection with the January 1986 sale of the Productol chemical plant. Moreover, at the hearing of Ferro's motion, counsel for PMC acknowledged that they had no facts indicating that Ferro had engaged in fraud in connection with any transaction other than the Productol asset sale. Nonetheless, PMC indicated its intent to seek discovery of information regarding Ferro's involvement in other real estate transactions and plants unrelated to the sale of the Productol plant and unrelated to PMC's dealings with Ferro. PMC conceded that its purpose in seeking such discovery is an attempt to support its conclusory allegations that there is a threat of continuing racketeering activity. *See H.J. Inc. v. Northwestern Bell Telephone Co.,* —— U.S. ——, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989).

## CONTENTIONS

Ferro contends that, absent any allegation or factual basis suggesting fraud unrelated to the asset sale, PMC is not entitled to discovery regarding Ferro's other plants and/or Ferro's involvement in other real estate transactions. By limiting discovery to matters having a factual basis, Ferro contends that the Court would prevent PMC from using the discovery process as a "fishing expedition" in the hope of establishing the "continuing threat" element of its RICO claims. *Northwestern Bell,* 109 S.Ct. at 2900. Ferro also asserts that such a limitation would help clarify and define the RICO claims while minimizing the potential for extremely costly and protracted discovery.

PMC contends that evidence of other fraudulent transactions is relevant to proving the element of "continuing threat" under RICO and is possibly prior similar act evidence admissible to prove fraudulent intent.[1] *See* Federal Rule of Evidence 404(b). Therefore, PMC contends that such information is discoverable under Rule 26 of the Federal Rules of Civil Procedure without having to show any factual basis or reasonable grounds to believe such evidence exists.

## ANALYSIS

A party may obtain discovery of any matter, not privileged, that is relevant to the subject matter of the lawsuit or that is "reasonably calculated to lead to the discovery of admissible evidence." Fed.R. Civ.P. 26(b)(1). However, the Court may

---

1. The Court is not persuaded that the mere existence of Rule 404(b) warrants a fishing expedition for uncharged fraud. First, to be admissible, fraudulent conduct must be similar to that alleged. Second, such evidence is frequently excluded in light of its potential for juror confusion, inordinate expenditure of court time and, because such evidence might well be considered for purposes other than intent, undue prejudice. In sum, Rule 404(b) is not some talisman that can be invoked to permit general foraging through a defendant's records. Where there is no rational basis for believing there is fraud on other parties, requests to take discovery regarding unrelated transactions are not reasonably calculated to lead to the discovery of admissible evidence.

issue any order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters." Fed.R.Civ.P. 26(c). In addition, Rule 16 of the Federal Rules of Civil Procedure authorizes courts to adopt "special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." Fed.R.Civ.P. 16(c)(10). Consistent with Rule 16, the *Manual for Complex Litigation,* Second, encourages courts "to direct that discovery be focused upon facts" relating to the claim. *Id.* at § 21.31. Finally, courts are directed to construe the federal rules to secure the "just, speedy, and inexpensive" determination of litigation. Fed.R.Civ.P. 1.

*Requesting information unrelated to the sale of the Productol chemical plant and unrelated to transactions between PMC and Ferro is not reasonably calculated to lead to the discovery of admissible evidence*

In substance, PMC's Complaint generally alleges the following: On or about January 28, 1986, PMC and Ferro entered into an Asset Purchase Agreement ("Purchase Agreement") whereby PMC purchased assets, *viz.,* real estate, machinery, equipment, inventory and supplies of Ferro's Productol Chemical Division ("Plant") located in Santa Fe Springs, California. Complaint ("Cmplt.") ¶ 5.

In the Purchase Agreement, Ferro made several representations and warranties, including that: (1) Ferro had not committed any material violations of federal, state or local law; (2) that licenses and permits listed under the Purchase Agreement constituted all licenses and permits necessary to legally operate the Plant; (3) no hazardous waste had been disposed on the Plant property; and (4) Ferro would hold harmless and indemnify PMC for any loss or damage arising out of any breach of warranty made by the Seller. Complt. ¶¶ 7, 9, 11.

Before January 28, 1986, it is alleged that Ferro employed a scheme to sell the Plant at an artificially inflated price. *First,* Ferro failed to disclose significant amounts of benzene soil contamination. *Second,* Ferro failed to disclose that the Plant's wastewater treatment system did not meet legal standards. *Third,* Ferro knew or recklessly disregarded the possibility that the level of sodium cresylate, used in the Plant's manufacturing process, constituted hazardous waste in violation of federal and local law. *Fourth,* Ferro knew and failed to disclose the high level of sludge in the Plant's cresylic acid tank. *Fifth,* Ferro failed to nameplate at least nine pressure vessels as required by law. *Sixth,* Ferro failed to inform PMC that approximately 50 of the Plant's underground storage tanks have not been registered as required by state and local law. As a result of Ferro's omissions and misrepresentations of material facts, PMC not only purchased the Plant at an inflated price but has and will continue to expend a considerable amount of money to remedy the above environmental violations. Complt. ¶¶ 16, 27, 37, 44, 50–52, 58, 65.

Regarding its RICO claims, PMC alleges: Defendant Ferro conducted the affairs of its enterprise through a pattern of racketeering activity. This pattern of racketeering activity consisted of repeated acts of mail fraud violative of 18 U.S.C. § 1341 and wire fraud violative of 18 U.S.C. § 1343. *Such fraudulent acts occurred in connection with the sale of the [Productol plant assets] and Ferro's continued refusal to abide by its obligations under the Purchase Agreement* ... *See* Complt. ¶ 88 (emphasis added). Each of Defendant Ferro's racketeering activities was undertaken for the specific purpose of furthering the common scheme to promote and continue the sale of [the Productol plant assets], to artificially and deceitfully inflate the price or value of [the Productol assets], to artificially and deceitfully maintain the price or value of [the Productol assets], and/or to avoid its lawful responsibilities in terms of the environmental matters ...,

and to obtain gain and profit at the expense of Plaintiff ... *See* Complt. ¶ 92.

The Complaint plainly shows that all of PMC's claims for relief, including its RICO allegations, relate to the sale of Productol and to Ferro's obligations under the Purchase Agreement. PMC has not alleged, either generally or with particularity, any fraud relating to any of Ferro's other plants, or to real estate transactions or asset sales unrelated to the sale of the Productol plant.

The need to reasonably limit the scope of discovery is acute for claims brought under the RICO statute. The Supreme Court has recognized that the breadth of the RICO language encourages attempts to turn business disputes into federal racketeering charges. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Thus, the risk that a party will attempt to use discovery to conduct a "fishing expedition" is a significant concern. *See Sutliff, Inc. v. Donovan Companies*, 727 F.2d 648, 652 (7th Cir. 1984) (Judge Posner described the RICO statute as "constructed on the model of a treasure hunt.") *See also Michaels Building Co. v. Ameritrust Company, N.A.*, 848 F.2d 674 (6th Cir.1988) (court recognized the dilemma of the trial judge who has to distinguish between strike suits and RICO claims that bear credibility). For these reasons, this Court must ensure that PMC has some basis in fact for seeking discovery of matters unrelated to its allegations of mail and wire fraud in the sale of the Productol plant.

Like other courts, and perhaps Congress, this Court is legitimately concerned about the misuse of civil RICO and the increasingly familiar phenomenon of expanding a straightforward breach of contract into a claim of promissory fraud. A plaintiff then asserts two or more mailings in furtherance of promissory fraud and, presto, claims a civil RICO violation. Distressingly, this type of pleading inflation has become all too common, particularly in the litigious climate of California. Since civil practitioners discovered the RICO statute some ten years ago, it seems that the lure

of transforming a simple, single damage contract claim into a treble damage RICO claim has proved irresistible. To sketch what is becoming more frequent is to begin to understand the dangers of abusing the RICO weapon. Even if one ignores the *in terrorem* effect of spurious treble damage suits, the danger of protracted and extraordinarily expensive discovery engendered by civil RICO claims is all too real.

In an effort to define and limit the reach of RICO, the Supreme Court recently held that an allegation of two predicate acts of racketeering constitutes a minimum requirement for a pattern of racketeering. *Northwestern Bell*, 109 S.Ct. at 2900. More is required. In essence a plaintiff must plead and prove that there is, from the predicate acts of racketeering, a threat of continuing activity. *Id.* at 2900.

Unfortunately, the *Northwestern Bell* requirement is now being used by RICO plaintiffs to expand the scope of discovery far beyond anything in dispute between the parties. RICO plaintiffs now claim license for broad discovery of documents and transactions having nothing whatsoever to do with the parties and the transaction underlying the RICO claim. The specter of such pervasive and expensive discovery may well be more of a threat to a defendant than treble damages and the stigmata of being labelled a racketeer. Except for extraordinarily well-heeled defendants, many defendants looking down the wrong end of double-barrelled RICO discovery may well be forced to capitulate or settle at figures having little or nothing to do with the merits of the dispute.

In the context of a civil RICO claim, and given the Court's obligation to reduce unreasonable expense and unnecessary delay of litigation, discovery of the type sought by PMC should not be permitted absent allegations of fraud on others or in other transactions, pleaded in a manner consistent with *Federal Rules of Civil Procedure* 9(b) and 11, or absent a factual showing demonstrating that discovery into transactions unrelated to the allegations of the complaint are *reasonably* calculated to lead to admissible evidence.

**188**

PMC's assertion that evidence of fraudulent transactions not connected with the sale of the Productol plant is relevant to proving a "continuing threat" for its RICO claims is unpersuasive. As stated in the Complaint, the only predicate acts, under RICO, alleged by PMC are the use of the mail and wires *incident to the sale of the Productol plant.* PMC has not alleged any fraudulent activity in connection with any other Ferro transaction and concedes that it has no basis for asserting such claims. Therefore, there is no showing that the information sought would be relevant to the subject matter of this suit, *i.e.,* the sale of the Productol plant and Ferro's obligations under the Purchase Agreement. Nor is there any showing that such discovery requests are *reasonably* calculated to lead to the discovery of admissible evidence. Thus, PMC is precluded from taking discovery of such matters, unless and until it first makes a threshold factual showing linking the information sought to the alleged racketeering activity.

The Court denies Ferro's motion insofar as it seeks to delay discovery, require a more definite statement of the RICO claims and to establish a protracted briefing schedule for challenging the sufficiency of the RICO claims. Nothing in this Memorandum of Decision, however, is intended to discourage the bringing of a partial summary judgment motion challenging the RICO claims after a reasonable period of time has elapsed for taking discovery not precluded by this Order.

IT IS SO ORDERED.