**BUCK CREEK COAL, INC., Plaintiff,**

**v.**

**UNITED WORKERS OF AMERICA, United Mine Workers of America, District 11, United Mine Workers of America, Local 4538, Roger T. Myers, William Yockey, Herb Priest, Steve Strahla, Harry Cowan, Loren Taylor, Joe Minks, and Rodney McGhee, Defendants.**

**No. TH 94–0065–M/H.**

United States District Court,
S.D. Indiana,
Terre Haute Division.

Aug. 24, 1995.

602

Patrick A. Shoulders, Ziemer Stayman Weitzel & Shoulders, Evansville, Indiana, for plaintiff.

John R. Mooney, Beins Axelrod Osborne Mooney & Greene, P.C., Sarah Starrett, International Union, United Mine Workers of America, Washington, DC, for defendants United Mine Workers of America, and Roger T. Myers.

Peggy A. Hillman, Indianapolis, Indiana, for all defendants.

### *ORDER ON MOTION TO DISMISS*

McKINNEY, District Judge.

This cause pends before the Court on a motion to dismiss all counts of the Complaint filed by the defendants. The Complaint consists of three counts, one of which asserts a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. §§ 1961–1968. The remaining two counts are claims under state law. Jurisdiction of this Court depends on the federal RICO claim. *See* 28 U.S.C. § 1331. The state law claims fall under the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Should the RICO charges be found inadequate to state a claim for relief this Court may decline to exercise its supplemental jurisdiction and remand the state law issues to the state court for further proceedings. *See* 28 U.S.C. § 1367(c); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct.

1130, 1139, 16 L.Ed.2d 218 (1966). Consequently, this opinion focuses on the federal RICO claim, without which the Court lacks subject matter jurisdiction over the remaining claims.

As further explained below, the Court finds the defendants' motion to be well taken, and therefore **GRANTS** dismissal of the RICO count with prejudice, and **REMANDS** the state law claims to the Sullivan Circuit Court.

## I. FACTUAL & PROCEDURAL BACKGROUND [1]

In April, 1993, Buck Creek Coal, Inc. ("Buck Creek"), an Indiana corporation that owns an underground coal mine in Sullivan County, Indiana, was the target of labor strife. The strife was encouraged, instigated and conducted by certain members of the United Mine Workers, District 11 ("District 11"), which includes United Mine Workers, Local 4538 and fourteen other local unions. The United Mine Workers of America, International ("UMWA"), is a labor organization composed of many regional districts, and the local unions within those districts. District 11 is a regional district within the UMWA.

Defendants William Yockey ("Yockey"), who is president of District 11, and Herb Priest ("Priest"), who is a district representative of District 11, are individuals capable of holding a legal or beneficial interest in property. *See* 18 U.S.C. § 1961(3) and § 1962(c). Defendants Steve Strahla, Harry Cowan, Loren Taylor, Rodney McGhee and Joe Minks are employees of Buck Creek or members of UMWA, and are also persons capable of holding an interest in property (together with Yockey and Priest, the "Persons"). *Id.*

District 11 is alleged to be an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and § 1962(c), the activities of which affect interstate commerce (the "Enterprise"). In April, 1993, the Persons engaged in, authorized, or ratified the following actions taken against Buck Creek and various other coal mines within District 11:

1. Communicating threats of physical violence, personal injury and injury to family members of employees, and threats of property damage to real and personal property of the Mines; [2]

2. Physically restraining or confining certain employees of the Mines against their will on the premises of the Mines, on private property and on public roads;

3. Engaging in mass demonstrations at the Mines and obstructing ingress and egress at the Mines;

4. Damaging and stealing real and personal property of the Mines, including trucks, transformers, conveyor belts and electronic equipment;

5. Preventing persons from traveling the public roads free from threats of, or actual, violence;

6. Using the telephone lines to communicate threatening and harassing messages to employees and agents of the Mines;

7. Failing to observe the terms and conditions of a court order and failing to ensure the observance by other UMWA members of the terms of said order;

8. Failing to adequately supervise and control UMWA members to prevent the activities described herein;

9. Failing to investigate complaints of threats, intimidation, harassment, violence and destruction of property by UMWA members; and

10. Interfering with the delivery of goods in interstate commerce by the use of threats of, or actual, physical violence to persons and property.

---

1. For purposes of a motion to dismiss, the Court is obliged to take all of the well-pleaded facts in the Complaint as true, and to draw all reasonable inferences in favor of the plaintiff. *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir.1991). Consequently, the factual background is drawn from the allegations of the complaint and any reasonable inferences drawn therefrom.

2. When the plural, "mines," is used in the Complaint, Buck Creek claims to be referring to its own mine and "various other coal mine locations within District 11." Complt. ¶ 8.

These actions were taken for the purpose of forcing others to cease doing business with the Mines, or to refuse to report for work at the Mines, to put others in fear of retaliation, and to force the Mines to agree to the demands of the Persons. Buck Creek claims it was injured in its business and its property by the conduct committed, authorized or ratified by the Persons.

UMWA, District 11 and the local unions, have the ability to control the activities of their individual agents. Yockey, Priest and Myers are individual agents of UMWA and District 11. All of the defendants knew or should have known about certain business relationships and prospective business relationships of Buck Creek's, all of which held a reasonable expectancy of future economic benefit to Buck Creek. Some of those relationships have ceased and some have become impossible to consummate since the events that began in April, 1993. Those relationships would have continued or would have been consummated had the enumerated acts not occurred. Buck Creek claims it has suffered economic harm as a result of the failure of these business relationships. The conduct at issue was undertaken by the defendants, both individually and in concert, with the express purpose of causing economic harm to Buck Creek.

This action was first filed in state court on May 17, 1993, but it was removed by defendants to this Court in June, 1993. At the same time the defendants filed a motion to dismiss the original complaint, which had alleged claims in three counts, a federal RICO claim, an Indiana RICO claim, and an Indiana tort claim for interference with business advantage. In the original Complaint, Buck Creek designated the collective group comprised of the United Mine Workers of America, its International, its District 11 and its Local 4538 as the "enterprise," and indicated the same group was the "persons" for RICO purposes.[3] Consequently, Judge Brooks dismissed Count 1 of the original

Complaint on March 15, 1994, in accordance with the teaching of *New Beckley Mining v. UMWA,* 18 F.3d 1161 (4th Cir.1994) (requiring RICO plaintiff to identify an enterprise that is separate from the "person"). The remaining claims were remanded to state court.

In the state court Buck Creek amended the Complaint to reconfigure the state and federal RICO claims, after which the defendants again removed the case to this Court in April, 1994. Defendants subsequently filed another motion to dismiss the entire Complaint, which is the one under consideration. The issues have been fully briefed and this matter is now ready for resolution.

## II. STANDARDS

### A. THE RICO PATTERN REQUIREMENT

■ In order for Defendants to be liable for a substantive civil RICO violation, their activities must include a "pattern of racketeering activity." *See* 18 U.S.C. §§ 1962(a)–(c), 1964(c).[4] Racketeering activity is defined in the text of RICO as any one of a number of specified state and federal violations. *See* 18 U.S.C. § 1961(1). A pattern of racketeering activity "requires at least two acts of racketeering activity, one of which occurred after the effective date of [RICO] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). In addition to the statutory requirement of at least two acts, the Supreme Court has held that a RICO pattern requires that the racketeering activities exhibit the factor of continuity plus relationship. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). If the alleged racketeering activities either are unrelated or do not exhibit continuity, there is no RICO pattern. *See id.* ("a plaintiff or prosecutor must show that the racketeering

---

**3.** For RICO purposes an enterprise includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *18 U.S.C. § 1961(4).*

**4.** RICO also prohibits certain specified acts involving the collection of unlawful (i.e. gambling) debt; in such instances, there is no "pattern of racketeering activity" requirement. *See* 18 U.S.C. §§ 1961(6), 1962.

predicates are related, *and* that they amount to or pose the threat of continued criminal activity") (emphasis in original).

 Racketeering activities are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. at 2901. The continuity requirement limits RICO actions to racketeering activities that "amount to or pose a threat of continued criminal activity." *Id.* at 239, 109 S.Ct. at 2900. Continuity is "centrally a temporal concept," which can be present in two forms: a closed-ended variant, in which the racketeering activities occur over a closed period that extends over a substantial period of time, or an open-ended variant, in which, although the racketeering activities have not actually occurred over a substantial period of time, "the conduct by its nature projects into the future with a threat of repetition." *Id.* at 241–42, 109 S.Ct. at 2902.

 The Supreme Court has not established a clear-cut test or specific formula for determining whether a particular set of facts exhibits continuity. *J.D. Marshall Int'l, Inc. v. Redstart, Inc.,* 935 F.2d 815, 820 (7th Cir.1992). Consequently, the Seventh Circuit employs a set of factors to be considered when making a continuity determination: the number and variety of predicate acts and the length of time over which they are committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries. *Id.*

### B. MOTION TO DISMISS

 When ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court views all facts alleged in the complaint, as well as any inferences reasonably drawn therefrom, in the light most favorable to the plaintiffs. *Mosley v. Klincar,* 947 F.2d 1338, 1339 (7th Cir.1991). However, the Court need not ignore facts set out in the complaint that undermine the plaintiffs' claims, nor is the Court required to accept the plaintiffs' legal conclusions. *American Nurses' Ass'n. v. Illinois,* 783 F.2d

716, 724 (7th Cir.1986). Dismissal is appropriate only if it appears to a certainty that the plaintiffs cannot establish any set of facts which would entitle them to the relief they seek. *Mosley,* 947 F.2d at 1339.

### III. DISCUSSION

#### A. SUMMARY OF ARGUMENTS

Defendants argue for dismissal on several grounds, the first of which is that the application of civil RICO remedies to a situation in which federal labor law arguably applies would seriously upset the federal labor regulatory framework. Related to, yet distinct from, this concern is the concept of preemption of other laws by federal labor laws, and the corresponding exclusive jurisdiction of the National Labor Relations Board, the federal administrative body that oversees labor relations and adjudicates labor disputes (the "NLRB").

Alternatively, defendants claim that even if RICO could apply to this labor dispute, the RICO claim fails on the merits. The defendants point to four reasons why Buck Creek's Complaint fails to state a RICO claim. First, Buck Creek has not alleged an actionable pattern of racketeering activity, in part because the plaintiff has not satisfied the requirement for an open-ended pattern that the alleged activities threaten to continue into the future; second, defendants argue that the predicate acts do not add up to racketeering activity; third, Buck Creek has not established that the enterprise and persons are separate entities as required by *New Beckley, supra;* and fourth, the named Persons are not sufficiently shown to have conducted or participated in the conduct of the affairs of the denominated enterprise.

Defendants also claim that Buck Creek has alleged no facts from which an agreement to violate RICO can be determined, which defeats the RICO conspiracy claim. Finally, the defendants argue the state law RICO claim fails for the same reasons as the federal one, and the tort claim fails on the basis of preemption and because Buck Creek failed to allege facts to support each of the elements of the tort claim.

Without responding to the argument regarding the balance struck by federal labor law, Buck Creek instead attacks the preemption argument by claiming that the acts in question are based on violations of non-labor laws. Alternatively, Buck Creek argues that even if the activities in question violated labor law, they can still be predicate acts for RICO purposes if they also violate criminal laws.

On the merits of the RICO claim Buck Creek argues it has sufficiently alleged a pattern of racketeering activity because the pattern is open-ended and it threatens to continue into the future. Essentially, plaintiff argues that violence and threats of violence are such a part of UMWA's regular way of doing business that the pattern can easily be discerned. Second, Buck Creek argues that the Hobbs Act, 18 U.S.C. § 1951, applies to this situation, because the striking union members here were not trying to secure legitimate collective bargaining objectives, such as higher wages. But if the Hobbs Act does not apply, Buck Creek notes that it has also alleged violations of state criminal laws against extortion. Third, Buck Creek has alleged individual members and officers of the union as the RICO persons, and District 11 as the enterprise. This configuration satisfies the requirement for separate entities, Buck Creek argues, because the mere fact of union membership does not render an individual legally indistinguishable from the union. Fourth, Buck Creek claims that the individuals have been shown to have participated in the illegal activities alleged, and that two of the named individuals, as officers of the union, play a large part in directing its affairs.

With respect to the RICO conspiracy claim, Buck Creek acknowledges that it must show that each defendant agreed to conduct the affairs of the enterprise, that each agreed to the commission of at least two predicate acts, and that each knew those acts were part of a pattern of racketeering activity. Buck Creek argues that direct evidence of an agreement need not be shown, and that circumstantial evidence is enough to allow the Court to infer an agreement.

Buck Creek makes the same arguments in support of its state RICO claim, Count 2, as it did for its federal claim. In Count 3, Buck Creek alleges a state tort claim of interference with business relationships. That claim is not preempted, according to Buck Creek, because even though the acts in question may violate the National Labor Relations Act ("NLRA"), that does not mean an unfair labor practices proceeding is Buck Creek's sole remedy.

### B. ANALYSIS

#### 1. RELATIONSHIP BETWEEN RICO AND LABOR LAW

To state a RICO claim under § 1962(c) a plaintiff must allege 1) conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 778 (7th Cir.1994). Each of these elements must be alleged to state a claim, and, in addition, the plaintiff must have RICO standing. *Sedima*, 473 U.S. at 496, 105 S.Ct. at 3285. Standing is conferred on a plaintiff whose business or property has been injured by reason of the conduct constituting a RICO violation. *Id.* To be compensable under RICO, those damages must have been proximately caused by the RICO conduct. *Haroco, Inc. v. American National Bank and Trust Co.*, 747 F.2d 384, 398 (7th Cir.1984) (stating that the language "by reason of" in § 1964(c) imposes a proximate cause requirement on plaintiffs).

Any effort to determine whether Buck Creek has successfully stated a claim for a RICO violation against the defendants must be guided by careful observance of the purpose behind the RICO statutes. RICO was enacted in part to eliminate infiltration of organized crime and racketeering activities into legitimate businesses or organizations. *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 913 F.2d 948, 954 (D.C.Cir.1990), *cert. denied*, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991) (citing S.Rep. No. 617, 91st Cong., 1st Sess. 76 (1969) (the "Senate Re-

port")). However, RICO was not intended to "reach every act of corruption or petty crime committed in a business setting." *Id.* Rather, it was aimed at attacking the "use of force, threats of force, enforcement of illegal debts, and corruption *in the acquisition or operation of business." Id.* (citing Senate Report at 81) (emphasis in original). It was also intended to reach long-term criminal activity, as opposed to brief, sporadic activity. *H.J., Inc.,* 492 U.S. at 242, 109 S.Ct. at 2902; *Vicom, Inc.,* 20 F.3d at 779–80. Essentially, RICO is to be used to stop the acquisition of businesses (including unions) by force or threats of force and the operation of businesses through a pattern of such activities.

The three subparts of § 1962 [5] "work in concert to proscribe the various different means by which such illegitimate acquisition or operation of business can occur." *Id.* Close scrutiny of § 1962 reveals that Congress was not trying to federally criminalize the predicate acts, rather it sought to outlaw the commission of those acts only when they served as the vehicle through which a defendant acquired an enterprise, or conducted or participated in the conduct of an enterprise's affairs. *Id.* at 954–55.

To read RICO more broadly so that it would encompass isolated incidents of violence during a labor dispute would not only "fly in the face of the statute's language and purpose, but would work a major restructuring of [the] legal landscape." *Yellow Bus,* 913 F.2d at 955. Congress has constructed an elaborate statutory framework in the labor law context that strikes a delicate balance between labor and management interests. That framework encourages accommodation between the employees' rights granted pursuant to § 7 of the NLRA, and an employer's property rights. *Id.; see* 29 U.S.C. § 157. The balance must be struck such that there is "as little destruction of one as is consistent with the maintenance of the other." *Hudgens v. NLRB,* 424 U.S. 507, 521, 96 S.Ct. 1029, 1037, 47 L.Ed.2d 196 (1976).

"[G]iving management a potentially powerful weapon [RICO] to wield against striking workers ... would reset the labor-management balance." *Yellow Bus,* 913 F.2d at 955. Each side of the balance maintains economic weapons to be used against the other under certain circumstances. *Golden State Transit Corp. v. Los Angeles,* 475 U.S. 608, 618–20, 106 S.Ct. 1395, 1400–02, 89 L.Ed.2d 616 (1986). Making attorney's fees and treble damages available in the labor relations area would dramatically change the federal legal landscape. Consequently, this Court will be cautious about applying RICO in the context of a labor dispute, to ensure that the conduct in question justifies blanketing federal labor law with an additional layer of civil remedies and criminal sanctions.

The right to strike is one of organized labor's most important economic weapons. Consequently, it is expressly preserved in § 7 of the NLRA. *See* 29 U.S.C. §§ 157, 163. If more peaceful means of handling labor disputes fail, federal labor law contemplates resort to economic weapons, such as a strike. *American Ship Bldg. Co. v. National Labor Relations Bd.,* 380 U.S. 300, 312, 85 S.Ct. 955, 964, 13 L.Ed.2d 855 (1965).

Section 8 of the NLRA regulates the conduct of both the employer and its employees with respect to negotiating agreements and resolving disputes. *See* 29 U.S.C. § 158. Within that section is found a prohibition against a labor organization coercing or restraining employees during a strike. 29 U.S.C. § 158(b)(1). Unions are also prohibited from engaging in a strike or a boycott against third persons to get them to cease their relationship with any other person or employer (sometimes called a secondary action). 29 U.S.C. § 158(b)(4), (b)(7), (e). Section 8 also prohibits a labor organization

---

5. RICO makes any person criminally or civilly liable who uses or invests income derived "from a pattern of racketeering activity" to acquire an interest in or to operate an enterprise engaged in interstate commerce, § 1962(a); who acquires or maintains an interest in or control of such an enterprise "through a pattern of racketeering activity," § 1962(b); who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs "through a pattern of racketeering activity," § 1962(c); or who conspires to violate the first three subsections, § 1962(d). *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 232–33, 109 S.Ct. 2893, 2897–98, 106 L.Ed.2d 195 (1988).

**610**

from threatening any person with reprisal or force. *See* 29 U.S.C. § 158(c). The conduct prohibited in § 8 constitutes part of what is known as unfair labor practices.

In this case, with the exception of Buck Creek's vague reference to theft and vandalism,[6] all of the alleged conduct undertaken by the defendants can be characterized as unfair labor practices. As such, it is regulated by § 8 of the NLRA, and is subject to the exclusive jurisdiction of the NLRB. Consequently, applying RICO under these facts would seem to be improper. Not only would it disrupt the delicate balance between labor and management interests supported by federal labor laws and policies, but it would also unnecessarily "RICOize" unfair labor practices. *See Yellow Bus,* 913 F.2d at 955. With these principles in mind, the Court will consider the remainder of the defendants' arguments.

### 2. FEDERAL PREEMPTION

To the extent that the alleged wrongful conduct on which Buck Creek bases its claim of a pattern of racketeering activity constitutes unfair labor practices, those allegations would render the RICO claim preempted by federal labor law. *See Amalgamated Ass'n. of Street, Elec. Ry. & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 276, 91 S.Ct. 1909, 1913, 29 L.Ed.2d 473 (1971); *Talbot v. Robert Matthews Dist. Co.,* 961 F.2d 654, 659 (7th Cir.1992) (stating that when defendant's conduct is arguably prohibited as an unfair labor practice RICO claim is preempted); *Brown v. Keystone Consol. Indus., Inc.,* 680 F.Supp. 1212, 1224-25 (N.D.Ill.1988) (stating that when the same conduct underlying a

RICO claim constitutes an unfair labor practice under the NLRA, it is preempted by that statute); *but see MHC, Inc. v. International Union, United Mine Workers of America,* 685 F.Supp. 1370, 1374-1380 (E.D.Ky.1988) (stating that RICO action is not preempted if the predicate acts are offenses independent of labor law).

The alleged conduct here renders the RICO claim preempted for two reasons. First, since Buck Creek points to conduct that is arguably prohibited by the NLRA, resolving this dispute will involve determining issues that fall within the exclusive jurisdiction of the NLRB. *See Talbot,* 961 F.2d at 659-60. The NLRB is given exclusive jurisdiction to determine whether conduct falls within the NLRA. *Id.* (citing *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 245-46, 79 S.Ct. 773, 779-80, 3 L.Ed.2d 775 (1959)); *Serrano v. Jones & Laughlin Steel Co.,* 790 F.2d 1279, 1284 (6th Cir.1986). Consequently, if there is even a question of whether the predicate acts are protected or prohibited by § 7 or § 8 of the NLRA, that question renders the predicate acts preempted by federal labor law.[7] If the predicate acts are preempted, so is the RICO claim. *See McDonough v. Gencorp, Inc.,* 750 F.Supp. 368, 370-71 (S.D.Ill.1990); *Brown v. Keystone Consol. Indus., Inc.,* 680 F.Supp. 1212, 1224-25 (N.D.Ill.1988); *Butchers' Union, Local No. 498 v. SDC Inv., Inc.,* 631 F.Supp. 1001, 1009 (E.D.Cal.1986). Second, to the extent the alleged conduct would not be a violation of a general law but for proscriptions of labor law, any claim based on

---

**6.** Theft and vandalism are not racketeering activities. *See* 18 U.S.C. § 1961(1).

**7.** This is true unless those acts fall within certain narrow exceptions to *Garmon* preemption. *See Vaca v. Sipes,* 386 U.S. 171, 179-80, 87 S.Ct. 903, 911-12, 17 L.Ed.2d 842 (1967). Those exceptions include instances where a congressionally-expressed exception to NLRB jurisdiction exists, when the regulated activity is merely a peripheral concern of labor laws, or when the regulated activity "touches interests deeply rooted in local feeling and responsibility." *Id.*

Here, the alleged conduct does not fall within an express exception to NLRB jurisdiction, nor is it a peripheral concern of labor laws. The activi-

ties engaged in by union members during a strike are of primary concern to the labor laws, which were passed in response to the increasing levels of violence that often attended labor strife. When the final exception is invoked, courts have conducted a balancing of the state's interests and responsibility and the federal interest in regulating labor relations. When there is a substantial state interest in remedying an "extremely abusive" act, preemption may not apply. *See Farmer v. United Brotherhood of Carpenters,* 430 U.S. 290, 302, 97 S.Ct. 1056, 1064, 51 L.Ed.2d 338 (1977); *Choate v. Louisville & Nashville Ry. Co.,* 715 F.2d 369, 371 (7th Cir.1983) (alleged conduct must rise to level of abuse where state's interest overcomes federal interest).

that conduct is preempted by federal labor law. *Brown,* 680 F.Supp. at 1225.

■■■ An analysis of the allegations of Buck Creek's complaint reveals that defendants are accused of roughly three categories of activities. The first can be characterized as intimidation or harassment of certain persons at or within the vicinity of Buck Creek or various other unspecified mines. Second, is theft and vandalism which damaged property of others. Third, is the failure to control the actions of individual union members who engaged in the first two activities.[8] All of these activities are alleged to have been undertaken for the purpose of forcing certain third parties to cease doing business with, or to avoid working for, Buck Creek, in the hopes that Buck Creek would accede to the "demands of the Persons." Since the Persons were alleged to have been conducting the affairs of District 11, the only reasonable inference to be drawn from this allegation would be that the demands were union demands.

The first and third categories constitute arguable violations of § 8 of the NLRA, and as such are relegated to the exclusive jurisdiction of the NLRB. In fact, the third category of allegations is the type of conduct that would not be wrong were it not for the duty of the union to negotiate in good faith. 29 U.S.C. § 158(d). Consequently, because federal labor law preempts the underlying conduct comprising categories one and three, the RICO claim based on that conduct is also preempted. To the extent that federal labor law does not preempt the conduct, (i.e. the second category of conduct, and any conduct in categories one and three that also violates criminal laws), the Court will proceed with an analysis of the merits of the RICO claim.

### 3. RICO MERITS

■■■ On a motion to dismiss, the court must view the well-pleaded facts, and draw all reasonable inferences, in the light most favorable to the plaintiff. A motion to dismiss, however, remains a useful procedural tool for weeding out frivolous claims.[9] Plaintiffs are charged with the responsibility of making a short and plain statement of their claim *showing* that they are entitled to relief. *Baxter by Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 734 (7th Cir.1994) (emphasis added). In doing so, their complaints must be "made with sufficient particularity to orient the defendant to the basic nature of [their] alleged injury." *Id.* at 736. Boilerplate allegations which essentially restate the elements of a claim, without any factual support for each element, are insufficient. *Id.*

In this case, Buck Creek has made minimal factual allegations about the activities alleged to constitute a pattern of racketeering activity. Instead, it has relied on vague, general references to unspecified threats or conduct against unspecified persons at unspecified times and places. The bulk of the allegations are made in conclusory fashion, merely restating or paraphrasing the language of the criminal statutes the defendants are accused of violating.

■■■ These allegations represent serious and destructive accusations, which have the potential to damage the reputations of many people. Nevertheless, when the RICO charges do not involve fraud, courts refrain from imposing the Fed.R.Civ.P. 9(b) heightened pleading requirements on plaintiffs. *See United States v. International Broth. of Teamsters,* 708 F.Supp. 1388, 1395–96 (1989) (citing cases). This Court will abide by that procedure.

A more stringent pleading requirement, however, is not necessary in order for this Court to grant the defendants' motion to dismiss. That is because Buck Creek failed to plead any facts that would sufficiently orient the defendants to the basic nature of the conduct they purportedly engaged in that would rise to the level of a RICO violation.

---

8. A fourth type of activity alleged, engaging in mass demonstrations, is arguably not a violation of any law, but rather a protected activity under the NLRA. *See* 29 U.S.C. § 157.

9. The need to weed out such claims is heightened when the claim itself involves charges that seriously harm the reputation of the parties, or when, as here, the type of case is particularly susceptible to attempts at overbroad discovery. *See PMC, Inc. v. Ferro Corp.,* 131 F.R.D. 184, 187 (C.D.Cal.1990).

When a plaintiff has made bare conclusory assertions, such as the defendants "conducted or participated in the conduct of the affairs of the enterprise, directly or indirectly, through a pattern of racketeering activity," *First Amended Complt.* ¶ 9, the Court will not speculate as to the facts that might fill in the blanks. Likewise, Buck Creek merely asserted, in conclusory fashion, that the last of the acts designated as the predicate acts, occurred within ten years of the first, and that the pattern of racketeering activity threatens to continue into the future. These allegations simply do not suffice to put defendants on notice of the conduct in which they engaged that placed them at risk of a civil RICO action.

Instead, the only reasonable inferences to be drawn from the conduct alleged is that during a labor dispute between UMWA and Buck Creek, some members of the union may have engaged in non-peaceful activities involving violations of some state criminal laws. Specifically, Buck Creek alleges violations of the state laws against theft and intimidation, and the federal law against extortion (the Hobbs Act).[10]

■ Extortionate acts that would normally constitute a violation of the Hobbs Act, when undertaken in pursuit of legitimate union ends, have been found not actionable by the Supreme Court. *United States v. Enmons,* 410 U.S. 396, 411, 93 S.Ct. 1007, 1015, 35 L.Ed.2d 379 (1973). The undisputed background of this case indicates that the UMWA was certified by the NLRB as the bargaining representative for Buck Creek employees, but that negotiations for a collective bargaining agreement had been unsuccessful, leading to the labor dispute at issue. Consequently, the conduct alleged to violate the Hobbs Act was arguably undertaken in pursuit of legitimate union ends, and such conduct does not, therefore, constitute a Hobbs Act violation or a predicate act for RICO purposes.

■ To the extent Buck Creek alleges violations of Indiana criminal law, the predicate acts fail for another reason. First, to be racketeering activity under RICO, the conduct must be named in § 1961(1). The state intimidation law violation would seem to qualify. However, that allegation, in addition to having been plead in conclusory fashion, would seem to suffer from the same problem as the federal extortion statute. As plead, the conduct seems to be an unfair labor practice, which subjects it to federal preemption as well. An employer's remedy for acts of intimidation by a striking employee is to have the employee arrested, or to refuse to reinstate the employee when the strike is over. *See Associated Grocers of New England, Inc. v. N.L.R.B.,* 562 F.2d 1333, 1335 (1st Cir.1977).

■ Finally, the theft allegation fails in part because it was alleged in conclusory fashion, and because theft is not the type of act that forms a predicate act under RICO. *See* 18 U.S.C. § 1961(1). Simple theft, which is a crime against property, is not the same as robbery, a crime against a person.[11] If individual members of the union were guilty of thievery, the proper remedy would be to press state criminal charges against them.

10. The elements of a Hobbs Act violation are: 1) obtaining property from another; 2) by wrongful use of actual or threatened violence; 3) an effect on interstate commerce. 18 U.S.C. § 1951; *see United States v. Enmons,* 410 U.S. 396, 397, 93 S.Ct. 1007, 1008, 35 L.Ed.2d 379 (1973).

11. Under Indiana law, theft is the knowing or intentional "exert[ion of] unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use." Ind.Code § 35-43-4-2(a). This provision is located in the section of the Code entitled, "Offenses Against Property." Robbery, on the other hand, is the knowing or intentional tak[ing of] property from another person or from the presence of another person:

(1) by using or threatening the use of force on any person; or
(2) by putting any person in fear.

Ind.Code § 35-42-5-1, which is located in the section entitled, "Offenses Against The Person."

The significance of this distinction is that the only category of offenses that constitute racketeering activity in which Buck Creek's allegation of theft could fall is the one describing certain acts chargeable under state law and punishable by imprisonment for more than one year. 18 U.S.C. § 1961(1)(A). That list contains robbery, but not theft. The type of offenses in that list tend to be what Indiana would describe as offenses against the person.

If, as Buck Creek suggests, the union encouraged or ratified these acts, the proper remedy would be to file an unfair labor practices complaint with the NLRB. RICO does not federally criminalize isolated acts of thievery that allegedly occur during a strike. Rather, it provides a remedy to an employer who is the victim of a pattern of racketeering activity. The allegations of the Complaint fall short of stating the requisite racketeering activities and the pattern.

To find a pattern requires the Court to find both relationship and continuity among the alleged predicate acts. Relationship exists when the acts have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. Relationship is not an issue here. Continuity, however, is another matter.

■ Buck Creek alleges an open-ended pattern of racketeering activity. There are three ways of stating a claim for such a pattern: 1) when a specific threat of repetition exists, such as when the scheme has no natural ending point; 2) when the predicate acts are a regular way of conducting an ongoing legitimate business; and 3) when the predicate acts can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes. *Vicom, Inc. v. Harbridge Merchant Services, Inc.,* 20 F.3d 771, 782 (7th Cir.1994).

■ To support a finding of continuity, and therefore a pattern, Buck Creek makes the bare assertion that the Persons continue their racketeering activities to the present. *See* First Amended Comp. ¶ 11. Such an assertion is insufficient to demonstrate a specific threat of continuity as required. *Vicom,* 20 F.3d at 783. Additionally, Buck Creek alleges that all of the activities of which it complains were undertaken for the purpose of forcing the Mines to accede to union demands. Taken as true, this allegation represents a natural ending point for the activities and precludes a finding of the first type of threat of continuity. *See Mc-Donald v. Schencker,* 18 F.3d 491, 498 (7th Cir.1994).

No allegations have been made that the enterprise exists only for criminal purposes, and consequently, the third type of continuity pattern is not at issue. Instead, Buck Creek states in its brief, although not in the Complaint, that violence and threats of violence are a regular way of doing business for the UMWA. Mem. in Opp. to Def's Mot. to Dism. at 10. The problem is that threats of violence are specifically prohibited by § 8 of the NLRA, and thus are preempted from forming the basis for RICO predicate acts. Moreover, Buck Creek has alleged no facts on which to base its conclusory statement that the Persons engaged in, ratified or authorized acts of violence. The Court is not obliged to accept the plaintiff's legal conclusions, and in this case, it will not.

■ With respect to the defendants' remaining arguments regarding separate identities for the enterprise and the defendants, and the sufficiency of the showing concerning conducting the enterprise's affairs through a pattern of racketeering activities, the first can be easily resolved. Buck Creek designated individual members or officers of the union as the persons employed by or associated with the enterprise, which is similar to how other RICO claims have been brought against union activities. *See Yellow Bus,* 913 F.2d at 956.

However, Buck Creek failed to allege sufficient facts to demonstrate that all of the named Persons conducted or participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity. RICO liability under § 1962(c) depends on showing that the defendants conducted or participated in the conduct of the affairs of the *enterprise,* not just their own, in such a manner. *Reves v. Ernst & Young,* 507 U.S. 170, 185, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993). Vague and conclusory allegations that the Persons conducted or participated in the conduct of the enterprise through actions taken by unnamed persons at unspecified times and places are not sufficient to state a claim.

■ Finally, with respect to the RICO conspiracy charge, Buck Creek's Com-

plaint fails to state a claim for two reasons. First, § 1962(d) conspiracy is premised on the existence of a pattern of racketeering activity, which constitutes the overt act taken by a member of the conspiracy. *See MCM Partners, Inc. v. Andrews–Bartlett & Associates, Inc.*, 62 F.3d 967, 971–980 (7th Cir.1995) (noting that defendants can be liable under § 1962(d) as long as they agreed to the conducting of the enterprise through a pattern of racketeering activity and agreed to the commission of at least two predicate acts). Since this Court found no predicate acts or pattern sufficiently alleged, the conspiracy claim must fail. Second, Buck Creek alleged no facts by which an agreement to commit a substantive RICO offense could be· supported. It is not enough to allege participation in the predicate acts (although here, the Court has already found that participation was not demonstrated). *See United States v. Stephens*, 46 F.3d 587, 591 (7th Cir.1995); *United States v. Marren*, 890 F.2d 924, 932 (7th Cir.1989); *Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1137 (7th Cir.1986).

 To properly allege a RICO conspiracy a plaintiff must specifically allege the existence of two agreements: one to a pattern of racketeering activity, and another to the statutorily proscribed conduct forming the predicate acts. *Frymire v. Peat, Marwick, Mitchell & Co.*, 657 F.Supp. 889, 896 (N.D.Ill.1987) (citing *United States v. Neapolitan*, 791 F.2d 489, 498–99 (7th Cir.1986)). To be liable for conspiracy a defendant must agree to one of the uses or effects of the pattern of racketeering activity set forth in § 1962. *Id.* Here, no such allegations have been made in support of which this Court could conceive of a set of facts, which means the conspiracy claim must fail.

### IV. CONCLUSION

RICO is to be applied with added caution in the context of labor disputes, out of respect for and to preserve the delicate balance struck by federal labor laws between management and labor interests. Many of the acts that Buck Creek alleged to provide the predicate acts for a RICO claim against the defendants constitute unfair labor practices.

Consequently, the NLRB has exclusive jurisdiction over those acts, and the NLRA preempts state and federal court jurisdiction to remedy such conduct. A RICO claim based on unfair labor practices is therefore preempted. The remaining acts either do not constitute racketeering activity, or do not constitute a pattern of racketeering activity. In sum, considering the requirements to state a RICO claim, and the conduct alleged by Buck Creek to have satisfied those requirements, it appears that Buck Creek has not stated a claim upon which relief can be granted. Count 1 of the First Amended Complaint is therefore **DISMISSED.** Counts 2 and 3 are **REMANDED** to the Sullivan Circuit Court.

IT IS SO ORDERED.